## ASHBROOK v STATE

Ohio Appeals, 1st Dist, Hamilton Co

No 4767.  Decided Jan 7, 1935

Louis B. Sawyer, Cincinnati, and George E. Kearnes, Cincinnati, for plaintiff in error.

Louis J. Schneider, Prosecuting Attorney, Cincinnati, Edward Strasser, Cincinnati, and Loyal Martin, Assistant Prosecuting Attorneys, Cincinnati, for defendant in error.

## OPINION

By ROSS, J.

Counsel for plaintiff in error stated during the trial that the confession of the plaintiff in error was "uncontradicted." In their brief, they state:

"We respectfully submit that the judgment of the Court of Common Pleas should be reversed, not because we contended in that court, nor do we now, that the defendant is not guilty of homicide, but because a number of errors were committed by the Nisi Prius Court, both at the trial and in overruling the motion for a new trial, and that certain conduct was indulged in by the assistant county prosecuting attorney of Hamilton County, Ohio, which effectively robbed the plaintiff in error of securing a fair and impartial trial."

Under the decision in **State of Ohio v Moon, 124 Oh St, 465,** it would be unnecessary to go further. However, we incline to a consideration of the errors assigned.

It is asserted that the plaintiff in error was not permitted to prove the surrounding circumstances of his early life, which it is claimed would have shown that the plaintiff in error was an under-privileged youth, with sub-normal mental capacity. An examination of the testimony of the plaintiff in error, his mother, and Alfred Crouse, cause us to conclude that the jury was

made aware of all the facts. That Crouse was not permitted to state his conclusion, therefore, is in our opinion not error.

Certain hypothetical questions were propounded to a ballistic expert, through which the plaintiff in error sought to show that he did not fire the fatal shot. A reading* of the record leads us to conclude that such was not the contention of the State. Certainly the evidence all tends to prove that the plaintiff in error was a participant in a joint enterprise to rob a taxicab driver, and that the use of a deadly weapon was agreed upon beforehand. It is undenied that he furnished the revolver, that he rode in the taxicab with his fellow conspirator. In his confession, which his counsel state is "uncontradicted," he stated:

"Q. What did you say when he asked you if you was ready to go?
"A. I said "Yes." Then he asked me if I had the gun and I told him "No", that we would have to get it. Then we went to my house and I went in and got the gun and we walked up Kemper Lane to Peeble's Corner. We stopped behind a confectionery where he used to park his cab when he worked for Brady and he asked me which I wanted to do hold up the man, or take the money. I didn't answer him. He said: "Well I'll settle it for you" and he took the gun. I took it out of my pocket and handed it to him. We walked over McMillan and the cruiser went by and he got scared and handed it back to me. I kept the gun until we got to Gilbert Ave. and he took it back and we walked down Gilbert. When we got to Sixth and Gilbert we was discussing about cabs and I said: "If you want to do it we will hail the next one." He said "All right just hail the next one and I did." The driver stopped and asked us where we wanted to go and I told him Torrence and Columbia. We went up over Gilbert Ave., through the Park and down Kemper Lane and over Columbia. A car was following us so Bill said: "How about this?" and I said: "Tell him to go down Collins Ave." Bill was sitting on the right hand side and I was sitting right in back of the driver. As we turned off Columbia Bill took the gun out and put it between his knees. He said this is all right and nodded his head and I said: "Stop here" to the cab driver. Bill started out the right hand side and I started out the left but I couldn't get out so I went to the right hand side and the door was open. Bill was standing on the running board

facing the driver. Just as I started to get out the car lunged and a shot was fired and I seen the taxicab driver grab for the gun. Bill was standing on the running board facing him. I was slammed up against the car when the car lunged. Bill grabbed the steering wheel to keep the cab from hitting the pole, it was in gear, and the engine stalled. When I got out of the cab and was thrown up against Bill he hollered "Run." He didn't leave for a couple of minutes, I guess that is when he robbed him."

Some complaint is made of the evidence given by the ballistic expert indicating that the gun in evidence fired the fatal bullet. It is in evidence that while certain tests were being made by the expert in the presence of the plaintiff in error, he stated that the tests were unnecessary as the gun in question was the one used in slaying the deceased.

The chief contention of the plaintiff in error is, that the court did not permit a wide latitude in the admission of evidence, which, it is asserted, would have had a tendency to cause the jury to recommend mercy. Even if we agreed with counsel in their conclusion upon the evidence in question, we find no abuse of discretion in the court in this respect.

As previously noted, the court did permit a great deal of evidence indicating the character of the surroundings of the plaintiff in error during his previous life, that he was placed in orphan homes, that he was repeatedly in contact with the Juvenile Court, and was an inmate of correctional institutions. The insanity either at the time of the homicide or trial was never suggested by the counsel for plaintiff in error. Nothing that has been suggested by counsel in the way of excluded evidence in our opinion tends to suggest grounds for a lenient attitude toward plaintiff in error. Certainly the action of the court cannot be considered an abuse of discretion.

In **Liska v State of Ohio, 115 Oh St, 283,** at page 285, the court say:

"The recommendation of mercy rests wholly in the sound discretion of the jury. They may extend or withhold as they see fit."

If the defendant in a case involving murder in the first degree has the right to introduce evidence specifically addressed to a claim for mercy, then the trial court would be bound to charge upon such evi-

dence as presenting an issue in the case. It has been uniformly held that the action of the jury in recommending or failing to recommend mercy is a matter entirely within their discretion. It is not an issue in the case, nor can evidence be introduced directed specifically toward a claim for mercy.

In State of Ohio v Ellis, 98 Oh St, 21, at page 32 the court say.

"The decisions of course are quite uniform that the trial judge may not advise or direct the jury touching a recommendation of mercy; and, if the judge may not do so, why should counsel be permitted to commit the jurymen in advance, either one way or the other, touching such recommendation? The jury should be left entirely free to consider that question after they have agreed upon a verdict of murder in the first degree."

It is claimed that a motion for a new trial should have been granted on the ground of newly discovered evidence. In our opinion, the court committed no error in overruling the motion. The evidence in the record conclusively showed the guilt of the accused. The evidence sought to be introduced in no way tended to cast any doubt upon his guilt.

We find no error in the record, and affirm the judgment sentencing the plaintiff in error to death.

HAMILTON, PJ, concurs.