COMMONWEALTH *vs.* CHARLES W. McNEIL, JUNIOR.

Essex.    February 4, 1952. — February 28, 1952.

Present: QUA, C.J., LUMMUS, WILKINS, SPALDING, & WILLIAMS, JJ.

*Evidence,* Admissions and confessions, Mitigation of penalty.  *Practice,
Criminal,* Exceptions: whether error harmful; Mitigation of penalty;
·Verdict;  Capital case.  *Error,* Whether error harmful.

A confession of the commission of murder made at a time when the con-
fessor had not been brought into any court was not inadmissible at
his subsequent trial for that crime on the ground that "he was not
advised, prior to the procurement of the confession, of his right to the
assistance of counsel."
The admission of a confession by the defendant at a murder trial was
harmless to him where he later testified to all the essential facts stated
in the confession and testified that the confession was the truth in
every respect.
Statements which a witness at a murder trial attributed to the defendant,
to the effect that the defendant had "killed" and was "hot by the
. . . police . . . for robbing," could be found by the jury to have
referred to a murder during the commission of a robbery for which
the defendant was being tried.
Evidence of admissions by the defendant introduced at a murder trial
was harmless to him in view of the fact that he admitted guilt in a
confession also introduced and in his testimony.
Under the provision of G. L. (Ter. Ed.) c. 265, § 2, as appearing in St.
1951, c. 203, for mitigation of punishment for murder in the first
degree by recommendation of the jury "upon and after consideration

of all the evidence," the evidence so to be considered by them is the evidence introduced on the issue of murder in the first degree; and there was no error at a murder trial in the exclusion of further evidence of events in the defendant's life specifically directed to the question of mitigation.

Under G. L. (Ter. Ed.) c. 265, § 2, as appearing in St. 1951, c. 203, a verdict of guilty of murder in the first degree requires the death penalty unless the jury unanimously join in adding a recommendation of mitigation of penalty to the verdict.

At a murder trial after St. 1951, c. 203, revising G. L. (Ter. Ed.) c. 265, § 2, had become effective, there was no error in failing to instruct the jury that the defendant would not be eligible for parole if the death penalty were not imposed upon his conviction of murder in the first degree.

INDICTMENT, found and returned on September 10, 1951.

The case was tried in the Superior Court before *Kirk*, J.

*M. Nicholson*, (*A. R. St. Onge* with him,) for the defendant.

*H. R. Mayo, Jr.*, Assistant District Attorney, for the Commonwealth.

LUMMUS, J.   The defendant brings this case here by appeal under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, as amended, from a conviction of murder in the first degree in the killing of Leo F. Monfet on July 24, 1951, at North Andover by shooting during an armed robbery of said Monfet.   Sentence of death was imposed under G. L. (Ter. Ed.) c. 279, § 4, as it appears in St. 1935, c. 437, § 3, and the execution of the sentence was stayed.

A confession made in writing and signed by the defendant on August 17, 1951, was received in evidence.   It was substantially as follows.   On July 23, 1951, the defendant left his home in Haverhill and went to Boston.   On the way back late in the evening he obtained rides from automobilists and reached North Reading.   There he was given a ride by Leo F. Monfet, who was an insurance agent.   Soon after the ride began the defendant drew a revolver and compelled Monfet to obey his orders.   At a point in North Andover Monfet turned the automobile around as ordered by the defendant.   The defendant ordered him to get out of the automobile and he obeyed.   On the command of the defendant to hand over his money, Monfet gave him $7, and

said he had no more, but the defendant did not believe him. Monfet said, "Don't hurt me. I have a wife and two kids." Both Monfet and the defendant were at the rear of the automobile when Monfet started to run, and the defendant shot him in the arm. Monfet continued to run, and fell over a rock, lying face down. He was alive, but apparently unconscious. He moved as if to get up, and the defendant shot him through the heart, killing him. Returning to Monfet's automobile, the defendant found a wallet in the glove compartment with more than $100 in it, which he appropriated. Unable to start the automobile, the defendant got a ride in a truck to Lawrence, from which place he rode to Haverhill in a taxicab, arriving after four o'clock in the morning. In the morning of July 26, the defendant went to Boston and thence to New York.

The first assignment of error is to the admission of the confession. It is not argued that it was procured by threats, promises or mistreatment. In his brief the defendant states as his ground that "he was not advised, prior to the procurement of the confession, of his right to the assistance of counsel." The cases cited in support of his contention are not in point, because in them a confession was excluded because it resulted from mistreatment of the prisoner. At the time the confession was made the defendant had not been brought into any court. There is nothing in the statutes of Massachusetts giving a person accused of a capital crime or any other crime a right to counsel before being brought into court. G. L. (Ter. Ed.) c. 277, § 47; c. 276, § 37A, inserted by St. 1932, c. 180, § 43. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 26. *Allen* v. *Commonwealth*, 324 Mass. 558. No decision of the Supreme Court of the United States has been cited to us, and we have found none, holding that a State owes a constitutional duty to provide counsel for one accused of murder prior to his being brought into court. In the recent case of *State* v. *Bunk*, 4 N. J. 461, 470, it was held that a confession made before the accused had counsel was admissible.

If there had been any error in the admission of the con-

fession, it was cured and made immaterial later in the trial when the defendant was called as a witness by his counsel, and testified to all the essential facts contained in his confession. The defendant was tried with his brother Frank D. McNeil, who was likewise charged with the murder of Monfet, but who was acquitted. In his testimony the defendant testified as follows. At first he testified that he knew nothing of the robbery and murder of Monfet except what Frank had told him. Later he testified that his previous testimony was untrue. He then testified that on July 23, 1951, he and Frank went to Boston, and got rides back in automobiles to Reading Square, where they got a ride with Monfet. The defendant sat on the front seat with Monfet, while Frank sat on the rear seat. After a short time, the defendant drew a revolver and ordered Monfet to drive under his orders. The defendant demanded money, and Monfet gave him $7. Monfet asked the defendant not to shoot him, as he had a wife and children. The defendant told him that if he obeyed orders nothing would happen. At a point in North Andover, the defendant told Monfet to turn the automobile around, and Monfet did so. At the order of the defendant, Monfet got out of the automobile, and the defendant followed him. At the rear of the automobile, the defendant asked for more money, but Monfet said he had none. Monfet started to run, and the defendant shot him in the arm. Monfet jumped over a wall, and lay flat on his face. The defendant shot him in the back and killed him. In the glove compartment of the automobile the defendant found more than $200, which he appropriated. Being unable to start the automobile, the defendant and Frank walked to Wilson's Corner, where they got a ride to Lawrence in an automobile. At Lawrence, they got a taxicab for Haverhill. The defendant testified that his confession already put in evidence was the truth in every respect. He testified that when he left Boston he intended to rob somebody by the use of the revolver, provided the person robbed was alone. He did not attack one automobilist who gave them a ride, because he looked too big and formi-

dable. On the morning of July 24, the defendant testified, he went to Boston, thence to New York, and thence to Florida.

A witness for the Commonwealth, named Campaigne, testified that on August 7, 1951, he gave a ride to the defendant and Frank, and that during the ride the defendant said to Frank, "I have killed before and I'll kill again. I'm hot by the State police in Massachusetts for robbing an insurance man," and also "Look in the glove compartment. That's where we found the insurance fellow's money." Those statements form the subject of the second assignment of error, on the ground that they "are not directly or inferentially connected with the present case." The jury could find that those statements referred to the robbery and killing of Monfet, who was the only "insurance fellow" of whom there was evidence. Besides, those statements could hardly have been harmful, since the defendant by his confession and his testimony had admitted both robbery, and murder in the commission of robbery, which constitutes murder in the first degree. G. L. (Ter. Ed.) c. 265, § 1, § 17, as appearing in St. 1943, c. 250, § 1.

General Laws (Ter. Ed.) c. 265, § 2, provided as follows: "Whoever is guilty of murder in the first degree shall suffer the punishment of death, and whoever is guilty of murder in the second degree shall be punished by imprisonment in the state prison for life." By St. 1951, c. 203, that section was amended to read as follows: "Whoever is guilty of murder in the first degree shall suffer the punishment of death, unless the jury shall by their verdict, and as a part thereof, upon and after consideration of all the evidence, recommend that the sentence of death be not imposed, in which case he shall be punished by imprisonment in the state prison for life. No such recommendation shall be made by a jury or recorded by the court if the murder was committed in connection with the commission of rape or an attempt to commit rape. Whoever is guilty of murder in the second degree shall be punished by imprisonment in the state prison for life. In no event shall a person convicted of murder in the first degree be eligible for parole."

The third assignment of error is to the exclusion of evidence that when three years old the defendant was severely beaten by his father, that at fourteen he was subjected to severe discipline at the Essex County Training School, where he remained two years, that he associated with evil companions in California, that he attempted suicide at the age of nine, and has been guilty of sexual perversion. The defendant contends that, though he is admittedly responsible criminally, he has a right to show his "mental deficiencies resulting from . . . [his] upbringing, environment and psychopathic personality" in mitigation of the punishment.

In other jurisdictions which have a similar statute it has been held that the question of mitigation does not require the taking of evidence specifically directed to that question, but that it is to be decided upon the evidence relevant to the issue of murder in the first degree. *People* v. *Witt,* 170 Cal. 104. *State* v. *Molnar,* 133 N. J. L. 327, 335. *State* v. *Barth,* 114 N. J. L. 112. *Ashbrook* v. *State,* 49 Ohio App. 298. *Commonwealth* v. *Williams,* 307 Pa. 134. Our statute provides for a mitigation of the punishment "upon and after consideration of all the evidence." That means, we think, after consideration of all the evidence received on the question of murder in the first degree. It was not intended to widen the inquiry so as to cover every event in the defendant's life. In many cases that would harm the defendant instead of benefiting him.

The fourth assignment of error is to the charge of the judge, in effect that the jury cannot add to a verdict of guilty of murder in the first degree a recommendation for mitigation of penalty, unless the jury are unanimous in such recommendation. The defendant contends that unless all the jurors agree either in making or refusing such a recommendation there is no verdict at all, and the case must be tried again. That was held in *Andres* v. *United States,* 333 U. S. 740, and *People* v. *Hicks,* 287 N. Y. 165. But the very words of our statute seem to us to require the death penalty for murder in the first degree, unless the jury, as a

part of their verdict, recommend a lesser penalty. To our minds the plain implication is that the verdict has its usual consequence of death, unless the jury join in a unanimous recommendation of mitigation. Unanimity in the action of a jury is always required. We are supported in our construction of the statute by the recent case of *State* v. *Bunk*, 4 N. J. 461, 476.

The fifth and last assignment of error is to the failure of the judge to instruct the jury, as provided in the statute of 1951, that if the penalty of death be not imposed, a person convicted of murder in the first degree shall not be eligible for parole. The defendant's contention is, in substance, that if the jury knew that the defendant could not be paroled they would be more likely to recommend a life sentence. Nothing in the statute suggests that parole is any concern of the jury. We think the judge was right. *State* v. *Dooley*, 89 Iowa, 584, 590–591. *State* v. *Schiller*, 70 Ohio St. 1.

On the whole case we find no error.

It is our duty to review the whole case under G. L. (Ter. Ed.) c. 278, § 33E, as it appears in St. 1939, c. 341, to determine whether the verdict of guilty of murder in the first degree was a miscarriage of justice. *Commonwealth* v. *Gricus*, 317 Mass. 403, 406–407. *Commonwealth* v. *Moore*, 323 Mass. 70, 79. *Commonwealth* v. *Cox*, 327 Mass. 609, 614. A careful reading of the evidence convinces us that the verdict was eminently just.

*Judgment affirmed.*