**STATE, Plaintiff-Appellee, v. LUCEAR, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22516. Decided June 30, 1952.

Frank T. Cullitan, County Pros., Theodore Williams, Asst. County Pros., Cleveland, for plaintiff-appellee.

Minor, McCurdy & Haynes, Cleveland, for defendant-appellant.

## OPINION

By HURD, J:

On Sunday, October 14, 1951, the defendant, Marvin Lucear, purchased at a local drugstore two forms of rat poison,—one a white powder which was odorless, the other · a paste which carried an order. He hid the poison behind the stove in the kitchen of his home at 9910 Pierpoint Avenue, Cleveland, Ohio, where he resided with his wife, Ocie Mae. On the following Tuesday, October 16, 1951, he placed a quantity of the odorless white powder in a bottle of his wife's medicine, a white liquid, which he had previously purchased with other medicine on October 12, 1951, on the prescription of a doctor who had been treating his wife for illness. On the same day, Tuesday, October 16th, Lucear administered three doses of the poisoned medicine to his wife. When she became violently ill, he took her to Mt. Sinai Hospital where she died the morning of October 17th.

A post mortem examination was performed on the deceased on October 17th at Mt. Sinai Hospital, which disclosed that death was due to arsenic poisoning. The bottle containing the white liquid medicine was taken to the laboratory of the county morgue where, upon analysis, it was found to contain arsenic sufficient to kill a human being.

Some time after these events, Lucear was arrested and on October 30, 1951, signed a confession admitting that he had placed the rat poison in his wife's medicine and then administered the same to her. In his confession, among other things, he stated that he had been having trouble with his wife "for about the last six months."

On November 13, 1951, the grand jury returned an indictment against the defendant charging murder in the first degree in the purported killing of his wife by means of poison. Upon arraignment on November 15, 1951, the defendant entered a plea of "not guilty" and "not guilty by reason of insanity." A special venire for a jury was issued December 14, 1951, and on January 7, 1952, the case came on for trial. In the midst of impanelling a jury, the defendant withdrew his plea of "not guilty" and in writing waived his right to trial

by jury and elected to be tried by three judges before whom he entered a plea of "guilty" as charged in the indictment, all as shown by the record. Upon trial had, the judges on the basis of defendant's plea of guilty and the evidence, sentenced the defendant to death.

During the course of the trial the defendant on cross-examination testified as follows:

"Q. Now, you put some of this powder, is that right, into her medicine?

"A. Yes, I did.

"Q. And how much did you put into her medicine, do you know?

"A. It wasn't as much as I could pick up in my little finger-nail.

"Q. Did you talk with anybody before you put that poison into your wife's medicine.

"A. No, I didn't.

"Q. You knew what rat poison was didn't you?

"A. No, I didn't. I never had bought any before.

"Q. Why did you buy it?

"A. I bought it to kill her.

"Q. You bought it to kill her?

"A. That's right.

"Q. You mean you bought it to kill Ocie? Is that right?

"A. Yes, I did.

"Q. After you bought it, you had it in the house from Monday morning, about one o'clock until Tuesday morning before you used it; is that right?

"A. Sunday until Tuesday.

"Q. Yes. Now how many doses of this white medicine did you, yourself, actually give your wife after you put the poison in the medicine?

"A. Just three, three doses.

"Q. Judge Silbert: I don't hear you.

"The Witness: Just three, three teaspoons.

"Judge Silbert: You gave her three doses?

"The Witness: One every three hours.

"Q. That was after you put the poison in it?

"A. Yes, it is."

Blythin, J., announced the decision of the court, and in part summed up as follows:

"There is no question in the world about thorough premeditation and ability and capability in premeditation in this case. Here was a purchase on a Sunday of poison, here was immediately a hiding of it and a keeping of it until Tuesday, and then we find that there is an elimination of the poison

which had an odor attached to it and the use of the one that did not have the odor.

"Then there comes the administration of it. Here the man admits that he administered and states frankly on the witness stand that he secured it for the purpose of doing away with his wife. His wife was hospitalized and she lived for some time after being admitted to the hospital. He did not even then disclose, but kept to himself, the deep dark secret of what had happened. He gave no information to anyone.

"The basis or grounds for granting mercy in a case of this kind must be found in the evidence produced in the case. This case has certainly been capably, ably, forcefully and carefully presented. As Judge Silbert, the presiding judge, has indicated, we are unanimous in our belief that the evidence in this case does not disclose a case where mercy is to be recommended."

After the imposition of sentence by the trial judges, a notice of appeal was filed, the pertinent part of which is as follows:

"Comes Marvin Lucear * * * and gives notice that sentence imposed upon defendant Lucear is being appealed to the Court of Appeals * * *."

Thus it appears that there is no appeal from the judgment of guilty as charged in the indictment, but the sentence of death only is appealed to this court, there being a single assignment of error presented as follows:

"The language and attitude of the presiding judge led counsel to believe that mercy would be extended and therefore resulted in the waiving of a jury to the great prejudice of the defendant."

The question of whether or not a recommendation of mercy in cases of conviction of murder in the first degree creates an issue which is subject to review, has heretofore been considered and decided by the courts of this state.

The leading case is **Howell v. State, 102 Oh St 411**, 131 N. E. 102, 17 A. L. R. 1108 (May 3, 1921) where, in paragraph 1 of the syllabus the court declared:

"1. **Sec. 12400 GC**, giving the jury discretion to recommend mercy in cases of conviction of first degree murder, confers an absolute discretion which should not be influenced by the court. However, this discretion should be exercised in view of all the facts and circumstances disclosed by the evidence."

In paragraph 3 of the syllabus, the court announced:

"3. In such a case, it is not error for the court, in its charge, to say to the jury that it was their duty 'to consider and determine whether or not, in view of all the circumstances and facts leading up to, and attending the alleged homicide as dis-

closed by the evidence' they should or should not make such recommendation."

In the case of **State v. Caldwell, 135 Oh St 424, 21 N. E. 2d, 343, 14 O. O. 320,** the court approved and followed the doctrine of Howell v. State, supra. To the same effect is the earlier case of **State v. Ellis, 98 Oh St 21, 120 N. E. 218** (March 1918) where the question arose on the voir dire examination.

To the same effect also are the cases of **State v. Ames, 50 Abs 311, 80 N. E. 2d, 168,** appeal dismissed **149 Oh St 192, 78 N. E. 2d, 48** (1948). **Ex Parte Knight, 73 Oh Ap 547, 57 N. E. 2d, 273, 29 O. O. 183, 41 Abs 89** (1944); **Shelton v. State, 12 Oh Ap 298** (1919); **Ashbrook v. State, 49 Oh Ap 298, 197 N. E. 214; State v. Tudor, 154 Oh St 249, 95 N. E.. 2d, 385, 43 O. O. 130; State v. Reed, 85 Oh Ap 36,** decision by this court (Dec. 1948) motion for leave to appeal overruled Mar. 2, 1949.

In the instant case the defendant elected to be tried by three judges under and by virtue of §13442-5 GC, which in part provides as follows:

"* * * Provided, however, that if the accused is charged with an offense punishable by death, he shall be tried by a court to be composed of three judges consisting of the judge presiding at the time in the trial of criminal cases and two other judges to be designated by the presiding judge."

"* * * Such judges, or a majority of them, shall have power to decide all questions of fact and law arising upon the trial, and render judgment accordingly; and provided further, that if the accused plead guilty of murder in the first degree, a court composed of three judges as herein provided shall examine the witnesses, determine the degree of crime and pronounce sentence accordingly. In rendering judgment of conviction of an offense punishable by death upon plea of guilty, or after trial by the court without the intervention of a jury, the court may extend mercy and reduce the punishment for such offense to life imprisonment in like manner as upon recommendation of mercy by a jury * * *."

It is clear from an examination of this statute that the rule in respect to granting or withholding mercy, is the same as that in effect when trial by jury is had, because the judges "have power to decide all questions of fact and law" and may "extend mercy and reduce the punishment * * * in like manner as upon recommendation of mercy by a jury."

It follows, therefore, that §12400 GC, giving to the jury discretion to be exercised in view of all the facts and circumstances disclosed by the evidence, to recommend mercy, has equal application to a three judge court sitting instead of a jury.

We think that based solely upon the evidence adduced at

the trial and applicable law as established by the cases the appeal from the sentence is not well taken. However, because this is a capital case, we have given careful consideration to the claim of counsel that "the language and attitude of the presiding judge led counsel to believe that mercy would be extended and therefore resulted in the waiving of a jury."

It should be noted that counsel does not claim that a commitment of any kind was made to him. Appropos this proposition, the following excerpt from the record, at a post trial hearing, beginning at page 223 is significant:

"Judge Silbert:  * * * And I said, I wanted you to know that what you are doing you are doing entirely on your own; that is, I told you definitely, the very last thing I said to you because I was afraid you would get the wrong impression. What you were trying to do was to get the individual notion of each judge and, of course, we are not in a position to tell you in advance what we are going to do. And I wanted to make that clear and I told you that very definitely, I said 'don't bank on the judges. You are entirely on your own.'

"Judge Blythin: I will say this for Mr. Minor: He has told me on more than one occasion, and has never told me differently, that he had no commitment whatever from any judge involved in the case. I will say that.

"Mr. Minor: Thank you, Your Honor.

"Judge Blythin: That is what I said.

"Mr. Minor: I said that before I made this allusion, I thought I said that it is very definite that I received no commitment * * *."

Considering the entire record in this case, the members of this court have arrived at the unanimous conclusion that the defendant had a fair trial in which no prejudicial error appears and indeed none is claimed. The record shows that the defendant presented no less than twelve witnesses who testified to his reputation as a peaceful and law-abiding citizen of good character, but a good reputation and previous good character will not avail to acquit under such facts and circumstances as are here presented. Undoubtedly this testimony was presented for the purpose of influencing the judges in favor of a recommendation of mercy. However, the judges decided to withhold a recommendation of mercy, a determination which rested solely within their sound discretion in the light of the facts and circumstances disclosed by the evidence. We are satisfied that not anything which occurred outside of the trial, including the rather unusual extra judicial conferences with the judges, would justify this court in a reversal of the judgment or sentence.

The judgment of the common pleas court is therefore affirmed. Exceptions noted.

SKEEL, PJ, THOMPSON, J, concur.