STATE *vs.* EARL V. JACQUES.

JULY 8, 1910.

PRESENT: Dubois, C. J., Blodgett, Johnson, Parkhurst, and Sweetland, JJ.

(1)  *Jurors.  Examination on Voir Dire.  Bias.*

In the examination of a juror on his *voir dire*, much must be left to the discretion of the presiding justice, and the reviewing court should not set aside the finding of the trial court unless it affirmatively appears that a juror entertained a fixed opinion which would bias his verdict.

(2)  *Indictments.  Evidence.*

Upon an indictment for murder, witnesses were properly permitted to testify to an alleged confession, by defendant, that there was a ten-dollar bill in the money which he took from deceased, and that he employed a person to get it changed for him; and testimony with regard to the possession of such a bill by defendant soon after the murder, and testimony that such person after the murder did procure change for such a bill at the request of defendant, was properly admitted.

(3)  *Indictments.  Confession.*

Upon a preliminary examination by the justice presiding at a trial for murder, in the absence of the jury, upon the competency of an alleged confession, while the testimony of the defendant might properly have been heard, still the refusal to take his testimony was not error, since it is entirely discretionary with the court as to the procedure to be employed to satisfy it as to the competency of such testimony, and its conclusion as to its admissibility is subject to exception.

(4)  *Indictments.  Confession.*

Where defendant confessed to the details of an assault, at a number of different times, and in the presence of different persons, which fact he did not deny, but claimed that they were made by reason of threats and promises, upon the testimony the trial court was warranted in finding that the confession was made voluntarily, and the jury was justified in believing it.

(5)  *Indictments.  Confession.  Inducement.*

A confession made to an officer, who ten days before the arrest and confession had said to respondent that it would be better for respondent to tell the truth, was entirely unconnected with such statement of the officer, and, in view of the circumstances surrounding the confession, such statement can not be considered as an inducement of the confession.

INDICTMENT for murder.   Heard on exceptions of defendant, and overruled.

SWEETLAND, J. This is upon exceptions taken in the trial of an indictment for murder.

On the evening of January third, A. D. 1908, in the town of Smithfield, a young woman named Mary E. Eddy was found in a dying condition on the roadway leading to her home from the Greenville Woolen Mill, where she was employed. She was picked up at about 6:30 P. M., and carried to her home. A physician, who was summoned, found a contused wound of the scalp on the left side, and a fracture of the skull, a blackened condition of the eye, and scratches on the face. She was practically unconscious. She died, about half past ten, the same night. When found, one of Mary Eddy's stockings was down, the garter broken, and her wages had been taken away. Blood stains were found on the road, and three pieces of a club were found near by. The club was a maple stick, known as a yarn stick, like those used in the mill, about four feet long, 1½ to 1¾ inches in diameter, of which a number were lying about the mill.

About three-quarters of the employees in the mill, whose wages were over ten dollars, received a ten-dollar bill in their pay envelopes. The wages of Mary Eddy were thirteen dollars and thirteen cents. The defendant had a ten-dollar bill changed by Myrtle Fague, at the store in Greenville, on Monday, January 15, from which he paid her fifty cents. Nine dollars were found hidden under the carpet in the defendant's room. He said he got the ten dollars from Fred Mars. Fred Mars, or Maher, denied that he let the defendant have the money. Afterwards the defendant stated he stole the ten-dollar bill from his father, in December. In support of its claim of a confession by the respondent, the State was permitted to introduce the testimony of certain police officers of the city of Providence, who had assisted the police of the town of Smithfield upon the case, and the testimony of other witnesses. These witnesses testified that the respondent, without inducement, and without threats having been made to him, confessed that he had assaulted Mary E. Eddy with a club, for the purpose of robbing her, and had taken from her her wages, in-

cluding a ten-dollar bill. When arraigned in the District Court upon a complaint charging him with the murder of Mary E. Eddy, the respondent pleaded guilty to the complaint.

The respondent has excepted to the action of the Superior Court in allowing Charles R. Brownell and Edward R. Trowbridge to sit as jurors, and has included in his bill the following exceptions:

1. "To the ruling of said Justice at the trial of said cause in denying the defendant's request that Charles R. Brownell, called and examined as a juror, be removed for cause, on the ground that said juror had formed an opinion that would require evidence to remove.

2. "To the ruling of said Justice at the trial of said cause in denying the defendant's request that Edward R. Trowbridge, called and examined as a juror, be removed for cause, on the ground that said juror had formed an opinion that would require evidence to remove."

In the examination on his *voir dire*, Charles R. Brownell stated that he knew nothing about the case from personal knowledge, and made the following replies to the following questions of the attorney-general: "Q. 5. Can you return a fair and unprejudiced verdict on the law and the evidence submitted to you in this case? A. From what I have read,—a few articles I have read in the paper, I don't know whether I could or not. Q. You have read the accounts in the paper? A. Yes, sir; two or three articles appertaining to the murder. Q. You mean to say that the reading of those articles in the paper has caused you to form such an opinion that you could not lay it aside, listen to the evidence and return a fair verdict? A. I think so, yes, sir; I don't think I could. Q. You don't think you could return a fair verdict? A. Not from what I have read in the papers. Q. Could you not lay aside what you heard, what opinion you have formed, and take this case fresh to-day, and hear the sworn evidence of the witnesses and the law given you by the judge and on that pass a verdict? A. Yes, sir." On his cross-examination he made the following replies to the following questions by counsel for the re-

spondent: "C. Q. 11. You really have formed an opinion?
A. Well, in one way I have, yes, sir. C. Q. To banish that
opinion from your mind it would require evidence, would it
not? A. Yes, sir. C. Q. Have you talked over this case
with anybody? A. No, sir. C. Q. You never have ex-
pressed an opinion? A. No, sir. C. Q. Did you say that it
would require evidence to change your opinion? A. Yes,
sir." The court then instructed him as follows: "The test is
right here. You are under oath, and you realize that if you
testify falsely it is perjury just as much as though you were a
witness. The test is simply this: it is not whether you have
formed an off-hand opinion simply from reading the news-
paper, such as an ordinary man would from reading the news-
paper in regard to an event in which he was not particularly
interested; the question is whether or not you can sit on it as
a juror, take the case, listen to the evidence first given by the
State and then for the defendant, and, having heard all the
evidence, take the law from the court and decide the case on
the evidence as you have heard it in this court and on no other
consideration. Now, it is on your conscience to say whether
or not you can do so. If you can not try the case fairly be-
tween the State and the defendant, in the way I have indicated,
listening to all the evidence, and decide strictly on that, and
not on what you think, you are not qualified. If you think
what you have read in the newspaper honestly would affect
your verdict after you have heard the whole case, you ought
not to sit, but if you can discard that you are qualified to sit.
What is your position in the matter?" To this Mr. Brownell
replied: "Well, I think I could, under the evidence in court."

In examination on his *voir dire*, Edward R. Trowbridge
stated that he did not know Mary Eddy or Earl V. Jacques,
and that he had no personal knowledge of the murder; and
made the following replies to the following questions of the
counsel in the case and the court: "Q. 4. Could you sit on
this jury and return a fair and impartial verdict on the law
and on the evidence submitted to you? A. Well, I should
much prefer not to sit on the jury for the simple reason that

I have read, of course, as others, the articles in the newspaper, and I feel that I have formed an opinion, somewhat of an opinion on the case. Q. But what you know of the case is limited to the reading of the newspaper? A. Yes. THE COURT: The test is right here, Mr. Trowbridge. It rests entirely with you. You know the condition of your mind. If you have read the case and have formed an opinion, a temporary opinion such as you pass on ordinary matters that do not interest you, and simply on an ex parte reading in the newspaper, if that is all it amounts to, and if you are able to put that out of your mind so that you can sit on the jury, listen to the evidence presented by the State first and then the evidence presented in behalf of the defendant, and, having heard both sides, decide between the State and the defendant regardless of any opinion you may have formed now or at any other time,—if you can do that, you are qualified to sit. If, however, your opinion formed is such that you can conscientiously say it might influence your verdict, then it is your duty to say it is. It is for you to say exactly what your mind is. A. I presume I am fair-minded enough that my opinion could be changed by the evidence, but I very much prefer not to sit on this jury at that. THE COURT: Jury duty is what every citizen owes to the State. It comes right down to the question whether you can disabuse your mind for or against one side or the other and decide the case on the evidence. If you can, you are qualified; and if not, you are not entitled to sit. A. I suppose that I could. I can't stand up here and tell you that I have formed an opinion so I could not be changed by evidence. C. Q. 6. You feel, however, you have formed an opinion which it would require evidence to remove? A. Simply by what I have read in the paper. MR. ARNOLD: I ask to have him removed for cause. THE COURT: As I understand it, he simply says that he has formed a temporary opinion which he can remove from his mind and that he can decide the case on the evidence and on no other consideration but the evidence; that being the case, I will deny your motion and note your exception to it."

By the action of the court in permitting these jurors to sit we must find that the Superior Court justice did not regard these so-called opinions of the jurors as fixed and settled opinions which would disqualify them as jurors, but that they were, rather, impressions, based entirely upon newspaper reports, in which the jurors had no particular interest; that they were impressions which the jurors could lay aside, and which would not prevent them from giving to the legal evidence, produced before them at the trial, its proper weight and effect. From the instruction which the justice gave to these jurors it is clear that he applied the correct legal standard to the question of their qualification. We must find that, from these jurors' answers and from their bearing in the examination before him, the justice was satisfied that they conformed to that standard. Upon this matter much must be left to the discretion of the justice presiding. In the very fully considered case of *Reynolds* v. *U. S.*, 98 U. S. 156, the court said:

"It must be admitted that there is a slight degree of uncertainty shown by the examination of the juror Cook, as to whether he had a fixed opinion that would bias his verdict. The question presented was one for the determination of the trial Court, and was one of mixed law and fact to be tried as far as the facts are concerned, like any other issue of that character, upon the evidence. 'The finding of the trial Court upon that issue ought not to be set aside by a reviewing Court, unless the error is manifest. It must be made clearly to appear that upon the evidence the Court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. In considering such questions in a reviewing Court, we ought not to be unmindful of the fact we have so often observed in our experience, that jurors not unfrequently seek to excuse themselves on the ground of having formed an opinion, when on examination, it turns out that no real disqualification exists. In such cases the manner of the juror while testifying, is oftentimes more indicative of the real character of his opinion than his words. That is seen below, but cannot always be spread upon the record. Care should,

therefore, be taken in the reviewing Court not to reverse the ruling below upon such a question of fact, except in a clear case. The affirmative of the issue is upon the challenger. Unless he shows the actual existence of such an opinion in the mind of the juror as will raise the presumption of partiality, the juror need not necessarily be set aside, and it will not be error in the Court to refuse to do so.'

"This principle is stated by our own Court in this language: 'The sufficiency of the cause of challenge is determined by the trial Court, and the inquiries are addressed to the conscience of the juror under oath.  He is examined, touching his qualifications, in the presence of the judge, who sees his manner of answering the questions and the probing of his conscience, which is oftentimes more clearly indicative of his disinterestedness of bias than the mere words used.  The reviewing Court, therefore, should exercise caution and the finding of the trial Court should not be set aside, unless it affirmatively appears that on the answers of the juror taken as a whole, he entertained a fixed opinion which would bias his verdict.' "

*State* v. *Wilson*, 38 Conn. 126; *State* v. *Willis*, 71 Conn, 293; *Com.* v. *Minney*, 216 Pa. St. 149; *Com.* v. *Crossmire*, 156 Pa. St. 304; *Guetig* v. *State*, 66 Ind. 94.

(2)    These exceptions should be overruled.

The respondent excepted to the ruling of the justice presiding, admitting testimony with regard to the possession of a ten-dollar bill by the respondent soon after the murder of Mary Eddy, on the ground that the State must be prepared to show that the defendant did not have a ten-dollar bill of his own at that time, and that the murdered woman, at the time she was assaulted, did have a ten-dollar bill on her person. We are of the opinion that the justice properly admitted testimony of the alleged confession of the respondent.  The witnesses to those alleged confessions testify that the respondent admitted that there was a ten-dollar bill in the money which he took from Miss Eddy after the assault, and that he employed one Mabel Fague, sometimes alluded to in the testimony as Mabel Brown, to get it changed for him.  It was not error to

permit the State to show that Mabel Fague, after the time of the murder, did procure change for a ten-dollar bill, for the defendant, at his request.

(3)     The respondent excepted to the ruling of the justice presiding, excluding the testimony of the respondent himself, at the preliminary examination before the justice sitting without the jury, upon the competency of the alleged confessions of the respondent.    When testimony with regard to the alleged confessions was first offered by the State, the justice, in the absence of the jury, heard testimony for the purpose of deciding whether such confessions were voluntarily made or not.    At this hearing the justice refused to receive the testimony of the respondent himself.    If the court was to conduct such an examination, we see no reason for refusing to take the testimony of the respondent upon the question.    But we do not regard the refusal of the justice to do so as error.    The question of the admissibility of such testimony is for the judge, and we consider the bettter rule to be that it is entirely within his discretion as to the procedure which he shall employ to satisfy himself of the competency of such testimony.    His conclusion as to the admissibility of testimony of confessions is a subject for exception to this court, if the respondent feels himself aggrieved. Furthermore, in no view of the duty of the justice in conducting his preliminary examination could there be found to be reversible error in his ruling in this case; for the respondent afterwards testified before the jury with regard to the alleged confessions and the influences which prompted him to make them, and in view of all the testimony, including the respondent's, on the subject of inducements for the confession, we find that the testimony of the confession was properly admissible. As the sole purpose of conducting the preliminary examination was to determine that point, the method of the justice in conducting such examination did not harm the respondent. We find no merit in this exception of the respondent.

(4)     The respondent excepted to the ruling of the justice, admitting testimony of confessions.    According to the testimony of a number of witnesses, the respondent, of his own accord, related

with particularity the details of an assault upon Mary Eddy, for the purpose of robbing her, and that he did take thirteen dollars and thirteen cents from her person while she was unconscious as the result of his blow. He made this statement at a number of different times and in the presence of different persons. The respondent does not deny that he made these statements, but claims that they were untrue, and that he was induced to make them by threats and promises. After reading the testimony we are satisfied that the justice was warranted in finding these various confessions to have been made voluntarily by the respondent, and that the jury was justified in believing them to be true.

(5) In regard to one of these confessions, the respondent claims that it should not have been admitted in evidence because one of the officers to whom it was made had said to the respondent, in an interview ten days before the arrest and ten days before the confession, that it would be better for the respondent to tell the truth. The confession was entirely unconnected with that statement of the officer. And in view of the circumstances surrounding the confession, the statement of the officer ten days before can not be considered as an inducement of the confession.

The respondent urges in his brief and his argument, "That the presiding justice erred in his failure to instruct the jury in the law, after an officer had told the prisoner that it would be better for him to tell the truth." In regard to this it is sufficient to say that the respondent took no exception to the charge of the justice and presented no requests to charge to said justice. Moreover, the justice instructed the jury very fully and correctly upon the law relating to the confessions which had been testified to by the witnesses.

We find no merit in any of the exceptions which the respondent has pressed before us, and the exceptions are overruled. Case is remitted to the Superior Court for sentence.

*William B. Greenough, Attorney-General,* for the State.
*John T. Cooney,* for the defendant.