## McKnight *v.* State.

(In Banc.  Nov. 5, 1934.)

[157 So. 351.  No. 31344.]

J. H. Keyer, O. M. Hornsby and Kennedy & Geisenberger, all of Natchez, for appellant.

154

**W. D. Conn, Jr.**, Assistant Attorney-General, for the state.

**Ethridge, J.**, delivered the opinion of the court.

The appellant, Obediah McKnight, was indicted, tried, convicted, and sentenced to death in the circuit court of Adams county for the murder of his wife, Mattie McKnight. It appeared that on January 12, 1934, Mattie McKnight was at the home of her sister, Mary Scott, sitting at a table when some one outside knocked at the window and about that time a load of shot was fired through the window, struck said Mattie McKnight in the left breast, and killed her. Outside the window from which the shot was fired was found a block or stick of wood of some considerable size. Said Mattie McKnight, the wife of the appellant, had been living with her sister

something like three weeks. After the killing, officers were telephoned for, and they went to the scene of the killing and found said block of wood at the window, and found a track with some peculiar mark on the sole which corresponded to tracks made by shoes found in the appellant's house. They proceeded to the appellant's house and there found him in bed apparently asleep. The officers questioned him, and he admitted to the deputy sheriff that he did the killing. Shortly after this confession to the deputy sheriff, the appellant, while in jail, made another statement to the sheriff admitting the killing.

On the following morning tracks were found in the direction of the appellant's home leading from the scene of the killing, and shoes were found which the appellant had worn. There was also found an empty shell along the way the appellant said he went from the killing, which he admitted he took from his gun.

A witness testified that he saw the appellant near dark on the evening of the killing about one and one-half miles from the scene of the killing, and that the appellant had a single-barreled shotgun and was going toward the scene of the killing.

When the deputy sheriff first arrested the appellant and obtained the confession, he accused appellant of the killing, stating to him that, if he did not tell the truth about it, he would be placed in jail. A general objection was made to the reception of this testimony on the ground that it should not be detailed before the jury, and the court overruled the objection and the confession was received in the presence of the jury. The appellant, however, took the stand in his own behalf and, on direct examination, stated that he had no recollection of killing his wife, but on cross-examination he admitted the killing and the fact that he went to the home of the sister of his wife and shot her through the window. He also testified

that she was a rebellious wife. A son of the appellant testified that he was away from home a part of the day and did not return until about nine or ten o'clock that night, with his shotgun.

Counsel for the appellant appointed by the court conferred with the appellant, and then filed a motion for a special venire which was allowed. Counsel then inquired of certain physicians in Natchez whether, under circumstances detailed to them, the appellant was of sound mind, and summons were issued for two of these physicians, and, when the venire was returned, and the court had examined most of them and eleven of the venire had been accepted as jurors by both sides, the appellant filed a motion for a continuance to a later day of the term, stating that one of the physicians summoned by him had an emergency operation and could not attend, and the other had gone to New Orleans on business before the service of the summons, and would return shortly.

The district attorney then stated that, if the appellant would state a hypothetical question which he expected to propound to said physicians, he might admit it in evidence. This proposition was accepted by appellant's attorney, and the hypothetical question, with the admitted answer the physician would make, was received in evidence, but on the motion for a new trial neither of the physicians were brought into court, and no evidence was produced as to what they would testify in reference thereto. It appeared in the application for a postponement of the trial to a later day that neither of the physicians had ever treated or examined the appellant.

If error was to be predicated upon the absence of these witnesses, they should have been produced, or their affidavits obtained on the motion for a new trial, so that the court could see what they had had before them in forming their opinion, and just what facts constituted the basis for such opinion. The rule requiring the appellant to

obtain the presence of witnesses on the motion for a new trial.has been laid down in the cases of Lamar v. State, 63 Miss. 265; Ware v. State, 133 Miss. 837, 98 So. 229; Coward v. State, 158 Miss. 705, 131 So. 254; Robertson v. State, 157 Miss. 642, 128 So. 772, and Blevins v. State (Miss.), 154 So. 269.

The hypothetical question above referred to did not furnish a sufficient basis for forming an opinion, and the answer thereto does not show sufficient probability that such insanity existed to warrant the jury in so finding. In addition to this, the appellant himself testified, and the questions propounded and his answers indicate a reasoning mind sufficient to show sanity.

In reference to the confession complained of, the court should have sent the jury out and should have ascertained whether the confession was reasonable or not in their absence. But, when the appellant took the stand, testified, and told the circumstances attending the killing and admitting it, the error, if any, in admitting the confession, was thereby cured. Weatherford v. State, 164 Miss. 888, 143 So. 853, and also see Ross v. State, 158 Miss. 827, 131 So. 367.

We find no reversible error in this cause, and it will be affirmed.

Affirmed and December 12, 1934, fixed as the date for execution of the sentence.