179 So.2d 20

**Billy Don Franklin BOULDEN**

v.

**STATE of Alabama.**

**8 Div. 175.**

Supreme Court of Alabama.

Sept. 30, 1965.

**440**

W. L. Chenault, Decatur, for appellant.

Richmond M. Flowers, Atty. Gen., and W. Mark Anderson, III, Asst. Atty. Gen., for the State.

LAWSON, Justice.

Billy Don Franklin Boulden was convicted in the Circuit Court of Morgan County of the first degree murder of Loyd C. Hays. He was sentenced to death in accordance with the verdict of the jury. He has appealed to this court under the automatic appeal law applicable to cases where the death sentence is imposed. Act 249, approved June 24, 1943, General Acts 1943, p. 217, carried in the 1955 Cumulative Pocket Part to Vol. Four, 1940 Official Code, and in the 1958 Recompiled Code as Title 15, §§ 382(1) et seq.

Hays, a conservation officer of the State of Alabama, was killed on the afternoon of

May 1, 1964. Boulden, a Negro, eighteen years of age, was taken into custody by law enforcement officers at the scene of the crime. The Honorable James N. Bloodworth, one of the Judges of the Circuit Court of Morgan County, was immediately notified of the crime and that Boulden was being held. Judge Bloodworth directed that Boulden be carried to the Limestone County Jail, in Athens, for safekeeping. He was kept there for several hours.

On the following morning, May 2, 1964, Boulden was brought to the Morgan County Court House before Judge Bloodworth, sitting as a magistrate. Boulden's father had been notified of the hearing to be held before Judge Bloodworth and was told that he could have a lawyer present if he so desired. The Sheriff of Morgan County had sworn to affidavits before Judge Bloodworth charging Boulden with the first degree murder and robbery of Hays and with the rape of Ann Burnett, a fifteen-year-old married white girl. Warrants of arrest signed by Judge Bloodworth were served upon Boulden and returned to Judge Bloodworth at the hearing.

Boulden's father, mother, two brothers and three sisters were present at the hearing. Those present were told by the Judge that the purpose of the hearing was to explain to Boulden and his family the nature of the charges against him and to inform him of his constitutional rights.

Boulden was told the punishment which could be imposed upon him by a jury if he was convicted of any one of the three offenses with which he was charged. He was told that he had a right to a preliminary hearing and the nature of such a hearing was explained to him. He was told that he had the right to apply for a writ of habeas corpus and the right to petition for bail. The nature of these proceedings was explained to him. He was told that he had the right to employ counsel but that if he was financially unable to do so the court would appoint a lawyer to represent him, but that a court-appointed lawyer would not necessarily be the lawyer of his choice.

Boulden was advised that he did not have to say anything at the hearing or at any other time that would incriminate him. He was told that he did not have to submit to an unreasonable search and seizure and was advised that any evidence which may have been obtained by an unreasonable search and seizure could not be used against him in a court of law.

The manner in which an indictment is obtained was explained and he was told that if indicted the law would still presume him to be innocent until the State met the burden upon it to prove his guilt beyond a reasonable doubt.

Boulden was then asked whether the law enforcement officers had mistreated him in any way or threatened to do so. He replied in the negative. Boulden stated that food and water had been furnished him and that he had not been denied bathroom privileges.

He was advised by Judge Bloodworth that it would be wise for him not to make any decision about his future course in court until he had talked to his lawyer.

Judge Bloodworth informed Boulden that he would be taken to Kilby Prison for safekeeping but that his lawyer, whether employed or appointed, would be able to see him there. At the conclusion of the hearing Boulden consulted with his family and was then taken to Kilby Prison near Montgomery.

Boulden was indicted for the murder of Hays by a grand jury of Morgan County on May 7, 1964. He was unable to employ counsel so prior to arraignment the trial court, under the provisions of § 318, Title 15, Code 1940, appointed an experienced member of the Morgan County Bar to represent him.

Before arraignment Boulden, by demurrer, challenged the indictment and each count thereof on several grounds. The demurrer was overruled.

Upon arraignment, Boulden pleaded not guilty and not guilty by reason of insanity. The court-appointed attorney was present

at arraignment. Hamilton v. State of Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114.

After pleading to the indictment, Boulden moved the court "to commit him to an insane hospital for evaluation." The motion was overruled following a hearing.

The case came on for trial on May 27, 1964, and was concluded on May 29, 1964. As heretofore indicated, the jury found Boulden guilty of murder in the first degree and imposed the death penalty. He was duly sentenced on May 29, 1964. Court-appointed counsel was present throughout the proceedings, from arraignment through sentence.

The attorney who represented Boulden in the court below was appointed to represent him on this appeal. He has filed a brief on Boulden's behalf.

Indictment

The indictment contains four counts, each charging murder in the first degree. The counts are identical except as to the means by which the offense is alleged to have been committed. In the first count, it is alleged that Boulden killed Hays "by shooting him with a gun or pistol"; in the second count, "by cutting him with a knife"; in the third count, "by shooting him with a gun or guns, or by shooting him with a pistol or pistols, or by cutting him with a knife or other sharp instrument"; and in the fourth count, "by cutting his throat with a 'Tree Brand' pocket knife."

█ The second and fourth counts are substantially in compliance with Form 79, § 259, Title 15, Code 1940, and therefore are sufficient as against the demurrer. Aikin v. State, 35 Ala. 399; Noles v. State, 24 Ala. 672; Franklin v. State, 233 Ala. 203, 171 So. 245; Rice v. State, 250 Ala. 638, 35 So. 2d 617.

█ The first and third counts are also in substantial compliance with Form 79, supra, except that they charge in the alternative the means by which the offense was committed. This is permissible under the provisions of § 247, Title 15, Code 1940. But when the means by which an offense was committed are charged in the alternative, each alternative charge must describe the means with the same definiteness or particularity as would have been required had the charge been made separately in a separate count. Rogers v. State, 117 Ala. 192, 23 So. 82; State v. Nix, 165 Ala. 126, 51 So. 754, and cases cited; Duncan v. State, 278 Ala. 145, 176 So.2d 840. An indictment in the language of the first count was held good by our Court of Appeals in Bufford v. State, 23 Ala.App. 521, 128 So. 126. The third count is more involved. It alleges in effect, that Hays died as a result of bullet wounds inflicted by a pistol or pistols or by a gun or guns, or as a result of cuts inflicted by use of a knife or other sharp instrument. While the third count may have been unnecessary in view of other counts in the indictment, we can understand why it was drawn and included, in view of the multiple wounds on the body of Hays, some caused by bullets, others by some kind of sharp instrument. It was drawn to meet the proof which would be adduced as to the exact cause of death. We are of the opinion that the third count sufficiently advises the accused of the means by which the State claimed he killed the deceased. Each alternative was sufficient under our holdings in Rogers v. State, supra; State v. Nix, supra; and Duncan v. State, supra. In regard to the last alternative in the third count, that is, that Boulden killed Hays by cutting him "with a knife or other sharp instrument," see Rowe v. State, 243 Ala. 618, 11 So.2d 749.

The demurrer to the indictment was properly overruled.

Motion for Commitment for Sanity Evaluation

█ By this motion counsel for Boulden apparently sought to invoke the authority granted the trial court by the provisions of § 425, Title 15, Code 1940, which reads:

"Whenever it shall be made known to the presiding judge of a court by which an indictment has been returned against a defendant for a capital offense, by the written report of not less than three reputable specialist practitioners in mental and nervous diseases, appointed by the judge, or by the written report of the superintendent of the Alabama state hospitals, that there is reasonable ground to believe that such defendant was insane either, at the time of the commission of such offense, or presently, it shall be the duty of the presiding judge to forthwith order that such defendant be delivered by the sheriff of the county to the superintendent of the Alabama state hospitals, who is charged with the duty of placing such defendant under the observation and examination of himself and two members of his medical staff to be named by him, constituting a commission on lunacy, with the view of determining the mental condition of such defendant and the existence of any mental disease or defect which would affect his present criminal responsibility, or his criminal responsibility at the time of the commission of the crime.

\*   \*   \*   \*   \*   \* "

In Howard v. State, 278 Ala. 361, 178 So. 2d 520, decided on June 30, 1965, in upholding the action of the trial court in overruling a similar motion, we said:

" \*   \*   \* the court is under no duty to appoint a lunacy commission or to procure a report of the Superintendent of the Alabama State Hospitals under Tit. 15, § 425, Code 1940. The court has simply the right to seek these aids for advisory purposes when the court, *in its discretion,* thinks such aids will be helpful. Campbell v. State, 257 Ala. 322, 58 So.2d 623; Oliver v. State, 232 Ala. 5, 166 So. 615." (Emphasis supplied.)

See Aaron v. State, 271 Ala. 70, 122 So. 2d 360; Lokos v. State, 278 Ala. 586, 179 So.2d 714, this day decided.

We hold that error to reverse is not made to appear in the trial court's action in overruling the motion presently under consideration.

### The Facts

The evidence on behalf of the State is substantially as hereinafter summarized.

On May 1, 1964, around 4:00 P.M., near U. S. Highway 31 in rural Morgan County, Boulden encountered Mrs. Burnett on a road near Flint Creek. They traveled in his car some distance into the surrounding woods on a dirt road, and there near the bank of a creek engaged in sexual intercourse. Mrs. Burnett testified that she was forced by Boulden to have sexual intercourse with him.

After completion of this act, they were walking back to appellant's automobile, which was parked some distance away, when Hays encountered them in the road.

Hays asked them what they were doing there. Mrs. Burnett then ran screaming from the side of appellant to a position behind the officer. At this time Boulden drew a .22 calibre automatic pistol he had on his person and fired it at Officer Hays until it either became empty or quit firing. Boulden then secured Hays' .38 calibre revolver and fired it at him until it ceased to fire. Boulden then drew and opened a pocket knife which was concealed on his person and proceeded to cut and stab with it until Officer Hays ceased resistance and fell to the ground.

The appellant then fled the scene, taking with him the officer's pistol, holster and wallet.

While the altercation between Officer Hays and Boulden was taking place, Mrs. Burnett ran out of the woods to the main road and there came upon Holly Marie Shull, her stepcousin, whose disabled car Mrs. Burnett had left in search of aid prior to encountering Boulden, and one Louis Compton, a nearby resident.

Mrs. Burnett, Mrs. Shull and Compton then proceeded to a service station some distance away to seek assistance. Mr. Compton flagged down two officers as they passed the service station on patrol, and after talking with Mrs. Burnett these officers hurried to the scene of the crime. Upon turning into the woods road they met Boulden driving out in his car.

The officers approached Boulden's car with guns drawn and asked him for his driver's license. The license he handed them bore the name "Loyd Hays," the name of the deceased. The officers then arrested Boulden and searched his person and his car, and on walking down the woods road found Hays' body.

Boulden testified in his own behalf. His testimony in regard to the shooting and cutting of Hays varies only slightly from the testimony offered by the State. He said that he did not start shooting until after Hays had made a motion to draw his pistol. Boulden admitted that he had sexual intercourse with Mrs. Burnett, but claimed that it was with her consent. Mrs. Burnett's testimony was to the effect that Boulden drew his pistol on her and forced her into his automobile, kept the pistol pointed at her while they drove to the place where the act or acts took place, and even kept the pistol pointed at her while the act or acts of sexual intercourse occurred.

We have not attempted to make a detailed statement of the evidence. We think the above summary will suffice. However, we will discuss some of the evidence in more detail in connection with our treatment of some of the questions which we will discuss.

### Exhibits

■ Exhibit 1 is a picture of Hays taken some time before the day of the crime. It was used in connection with the examination of witnesses for the purpose of identification. It was admitted without error. Malachi v. State, 89 Ala. 134, 8 So. 104.

■ Exhibits 7 through 18 and Exhibit 45 are photographs of Hays' dead body.

They were admitted without error. Washington v. State, 269 Ala. 146, 112 So.2d 179, and cases cited.

■ Exhibits 19, 20, 23, 24, 25, 31 and 32 are pictures of the scene of the homicide. They were properly admitted. Blue v. State, 246 Ala. 73, 19 So.2d 11; Green v. State, 252 Ala. 513, 41 So.2d 566; Henry v. State, 277 Ala. 247, 168 So.2d 617.

■ Exhibits 6 and 21 are diagrams of the *locus in quo* and surrounding territory. The entries on the diagrams were shown by witnesses to properly represent the true situation. They were properly admitted. Hardie v. State, 260 Ala. 75, 68 So.2d 35; Bosarge v. State, 273 Ala. 329, 139 So.2d 302.

■ Exhibits 26, 27 and 28 are aerial photographs of the scene of the homicide and surrounding territory. They were admitted without error. Aaron v. State, 271 Ala. 70, 122 So.2d 360. The same is true of Exhibits 26A, 27A and 28A, which are plastic covers or overlays placed over the aerial photographs on which identification markings were placed showing the location of pertinent points.

■ Exhibits 2, 3, 4, 22, 41, 42 and 44 are articles of clothing and other apparel worn by Hays at the time of the homicide. They were admitted without error. Walker v. State, 223 Ala. 294, 135 So. 438; Roberts v. State, 258 Ala. 534, 63 So.2d 584; Barbour v. State, 262 Ala. 297, 78 So.2d 328.

■ Exhibits 38 and 39 are the shirt and trousers worn by Boulden at the time of the homicide. They were properly admitted in evidence. Teague v. State, 245 Ala. 339, 16 So.2d 877; Floyd v. State, 245 Ala. 646, 18 So.2d 392.

■ Exhibit 37 is a revolver containing six fired cartridges and Exhibit 38 is a holster which held the revolver at the time the revolver and holster were found in Boulden's car. The revolver and holster belonged to Hays or were in his possession at

the time of the homicide. Those articles were admitted in evidence without error, as they tended to connect Boulden with the commission of the offense. Frost v. State, 225 Ala. 232, 142 So. 427. The same is true of Exhibit 33, a black wallet containing sixteen dollars, which the evidence shows belonged to Hays but was in the possession of Boulden at the time of his arrest at the scene of the crime. Exhibit 34 is a black wallet found on Boulden at the time of his arrest, which contained identification and other papers. We think it was admitted without reversible error. Exhibit 5 is a small red holster which the evidence shows was worn by Boulden at the time of the offense and at the time of his arrest. Exhibit 35 is a long piece of wire found in Boulden's pocket at the time of his arrest. The admission of these articles does not constitute reversible error.

■ Exhibit 43 is a shoe found near the scene of the crime. It was shown to have been worn by Mrs. Burnett at the time of the homicide and to have been lost by her as she fled from the scene. We can see no injury to the appellant, Boulden, by the court's action in permitting the shoe to be introduced.

■ Exhibit 36 is a pocket knife which was found on Boulden at the time of his arrest. The evidence showed that blood and "a fatty material" of human origin were found on the blade of the knife. Since the evidence showed that Hays' throat had been cut and his body cut and stabbed several times, we are clear to the conclusion that the knife was properly admitted in evidence. Brown v. State, 229 Ala. 58, 155 So. 358.

■ Exhibit 40 is a part of the taillight assembly off of Boulden's car. The evidence shows that as Boulden sought to leave the scene in his car, he had to push Hays' car out of his way. The evidence also shows that paint of the color and consistency of that on Hays' car is on Exhibit 40 and it was, therefore, properly admitted in evidence as tending to corroborate the other evidence which placed Boulden at the scene of the crime.

■ We have not overlooked the fact that Exhibits 5, 33, 34, 35, 36, 37 and 38 were taken from Boulden's person or from his car at the time of his arrest and that the prohibition of the federal constitution against unreasonable searches and seizures is applicable to trials in the courts of this state by virtue of the decision of the United States Supreme Court in Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. See Duncan v. State, 278 Ala. 145, 176 So. 2d 840. But there was no motion to suppress nor objection interposed to the introduction of those exhibits on the ground that they were obtained by unreasonable searches and seizures. See Sanders v. State, 278 Ala. 453, 179 So.2d 35, 6 Div. 130, this day decided. However, as to these exhibits, we do not think a motion to suppress or an objection would have been well taken for, as shown above, each of them was seized from Boulden's person or from his car, which was in his possession and under his control at the time of his arrest. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. The arrest was lawful, for the arresting officers unquestionably had reasonable cause to believe that Boulden had committed a felony. § 154, Title 15, Code 1940. See Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794; Knox v. State, 42 Ala.App. 578, 172 So.2d 787, cert. denied, 277 Ala. 699, 172 So.2d 795.

Exhibit 40, a part of a taillight assembly, was apparently removed from Boulden's car some time after his arrest, so its admissibility might have been questionable if a motion to suppress or objection had been interposed to its introduction on the ground that it was obtained as a result of any unlawful search and seizure. But there was no such motion or objection. Sanders v. State, supra. The same is true of Exhibits 36 and 37, Boulden's shirt and trousers, and the record fails to reveal the manner in which those articles came into the possession of the State.

## Confession

As shown above, Boulden was taken to the Limestone County Jail in Athens shortly after he was arrested on the afternoon of May 1st. As far as this record discloses, he made no statement there. He was taken to Kilby Prison, near Montgomery, on May 2nd following his appearance before Judge Bloodworth in Decatur, at which time he was advised of his constitutional rights. He remained in Kilby Prison until May 6th and it does not appear that he made any confessory statement while in Kilby. He was not kept incommunicado while in Kilby. He was visited by a member or members of his family while there.

On the morning of May 6th Boulden was transported from the prison to the scene of the crime in Morgan County in an automobile driven by the sheriff of that county. The sheriff and Boulden were accompanied on the trip by Captain Williams and Lieutenant Watts of the Alabama Department of Public Safety and by Deputy Fire Marshal Howard Dees.

After reaching the scene of the crime Boulden confessed, according to the testimony of Captain Williams and Lieutenant Watts. The sheriff and Dees did not testify.

Lieutenant Watts was the first witness called by the State for the purpose of proving the confession. As soon as it became apparent that Watts was to be questioned by the State concerning a confession, counsel for Boulden requested a *voir dire* examination of the witness outside the presence of the jury. The request was granted and the jury was excluded.

After the jury left the courtroom Watts testified in response to questions propounded by the Solicitor and by the Court that on no occasion when he was present with Boulden did anyone threaten, abuse or intimidate Boulden or offer him a reward to get him to confess.

The Court then advised counsel for Boulden that he could proceed to examine Watts

on *voir dire*. He did so. The testimony of Watts outside the presence of the jury is in substance as follows. He first saw Boulden at the scene of the crime late in the afternoon of May 1st. He next saw him in the Limestone County Jail at about ten-thirty that night, when witness and Captain Williams questioned him. The questioning began just before eleven o'clock and lasted until shortly after midnight. The questioning, including note-taking, lasted not over two hours. Before the questioning began, Boulden was advised by Captain Williams that he did not have to make a statement and that any statement he made might be used against him. During the questioning Boulden was given food and he had access to a bathroom where water was available. He was allowed to smoke. He was not abused or manhandled and there were no marks on his body. The next time he saw Boulden was in the Morgan County Courthouse in Decatur early on the morning of May 2nd, when Boulden was advised as to his constitutional rights in the presence of his parents and other members of his family. He did not have a lawyer at that time but he was told that he or his family could employ a lawyer and that if they were unable to do so that a lawyer would be appointed for him and that he would be permitted to confer freely with his family and his lawyer. The next time witness saw Boulden was around noon on May 6th just before the trip back to the scene of the crime. During the trip Boulden sat in the back seat between witness and Captain Williams. Boulden did not cry or make any protest. No one hit him or abused him or talked to him in a loud voice or cursed him. No one promised him anything or told him what to say. Boulden talked freely and laughed during the trip. He said some members of his family had been to see him while he was in Kilby Prison.

Counsel for Boulden started to examine him concerning the confession on this occasion while the jury was excluded but changed his mind when the trial court ruled that if he did so examine him Boul-

den, under our case of Fikes v. State, 263 Ala. 89, 81 So.2d 303, would be subject to being questioned by the State as to his participation in the crime.

The trial court determined outside the presence of the jury that the State had shown prima facie that the confession about which Watts was to testify was voluntarily made. The jury was recalled and the Solicitor proceeded to question Watts concerning the confession, after having elicited from him in the presence of the jury a negative answer to the question whether he or anyone in his presence on the way to the scene of the crime from Kilby Prison, or after reaching the scene, offered Boulden any reward, inducement or promise to get him to make a statement or threatened him or abused him in any way to get him to make a statement.

Watts explained in detail what occurred after he, Captain Williams, Boulden and the other occupants of the car reached the scene of the crime on the afternoon of May 6th. We will not set out his evidence in detail. Suffice it to say that it shows that Boulden admitted that he shot and cut the deceased. On cross-examination, counsel for defendant brought out testimony tending to show that Boulden also made statements to the effect that he had raped Ann Burnett prior to the killing. On re-direct the State went into that phase of the case.

Captain Williams was also called as a witness by the State to testify as to the confession made by Boulden at the scene of the crime on the afternoon of May 6th. This is the same confession about which Lieutenant Watts had testified. There was no request made by counsel for Boulden that the jury be removed from the courtroom while the voluntariness of the confession was determined. This witness was asked substantially the same questions by the Solicitor as had been asked Watts as to whether Boulden had been threatened, abused or mistreated in any way or had been offered any reward to make a statement. He gave negative answers to all

such questions. Captain Williams was then permitted to state without objection the statements made by Boulden wherein he admitted his guilt. Williams' testimony in regard to the confession was substantially the same as that given by Watts. On cross-examination Williams was asked if he told Boulden on May 1st, May 2nd or May 6th that there were people who wanted to kill him and if he would confess, witness would guarantee his safety. Williams denied making any such statement.

We have here no evidence of physical brutality or threats thereof, or of reward or promise of reward; no evidence that Boulden was removed from jail to jail at night for questioning in secluded places. There is no evidence that Boulden was ever required to disrobe or to stand on his feet for long periods during questioning or denied food, sleep or bathroom facilities. There is no evidence of protracted questioning. As far as this record discloses Boulden was never placed under a high-powered light during questioning or questioned in a place containing any such device. Boulden was not deprived of the services of a lawyer prior to the time the confession was made. He had made no effort to obtain the services of a lawyer, although he had been advised to do so.

True, Boulden was an eighteen-year-old Negro boy who was charged with the murder of a white man in Alabama. If those facts alone make his confession inadmissible, then some federal court will have to so declare. We will not. Boulden was not, according to this record, mentally deficient, although he and his mother testified that he occasionally had fits and was nervous. He is not illiterate. He was in the ninth grade at the time of the crime.

We have given careful consideration to the State's evidence as it pertains to the circumstances and conditions shown by the record to have existed from the time Boulden was arrested to the time the confession was made, and we are of the opinion that they were not such as to be

inherently coercive or to have deprived Boulden of his free will to choose either to admit his guilt, to deny it or to remain silent. We think the trial court correctly admitted the confession in evidence under the decisions of the Supreme Court of the United States cited in Phillips v. State, 248 Ala. 510, 28 So.2d 542. Nor do we think our holding there is in conflict with Watts v. State of Indiana, 338 U.S. 49, 69 S.Ct. 1347, 93 L.Ed. 1801; Payne v. State of Arkansas, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975; Gallegos v. State of Colorado, 370 U.S. 49, 82 S.Ct. 1209, 8 L.Ed.2d 325; Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; Culombe v. Connecticut, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037; Blackburn v. State of Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242; Turner v. Com. of Pennsylvania, 338 U.S. 62, 69 S.Ct. 1352, 93 L.Ed. 1810; Johnson v. Com. of Pennsylvania, 340 U.S. 881, 71 S.Ct. 191, 95 L.Ed. 640.

We think the facts and circumstances here, in their totality, are different from those in the cases cited above. It would be meaningless to further lengthen this opinion by attempting to make a comparison of the facts in the cited cases and the facts in this case, in that the Supreme Court of the United States has frequently stated that, when faced with the question whether there has been a violation of the Due Process Clause of the Fourteenth Amendment by the introduction of an involuntary confession that court must make an independent determination on the undisputed facts. Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872. That court has said that no exact formula for determining whether a confession was voluntary can be established and takes the case-by-case approach and declares legal principles only in the context of specific factual situations. The result is almost one of frustration to state courts and judges.

Under the facts of this case, we do not think that the holding of the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, discussed at length in Duncan v. State, 278 Ala. 145, 176 So.2d 840, requires a reversal of the judgment below because a lawyer was not present at the time the confession was made. Also see Lokos v. State, 278 Ala. 586, 179 So.2d 714, and Sanders v. State, 278 Ala. 453, 179 So.2d 35, this day decided. The evidence shows that shortly after his arrest on the night of May 1, 1964, while being held in the Limestone County Jail, Boulden was told by Captain Williams that he did not have to make a statement and that any statement he made might be used against him. And, as we have shown heretofore, Judge Bloodworth on the following morning took great pains to explain to Boulden, in the presence of members of his family, his constitutional rights, saying in part:

"You have a right, under the Constitution, to have a lawyer to represent you if you choose to hire one of your own choice. If you don't choose to hire one, unable, if you are too poor to hire one, then the Court appoints one for you at the State's expense. That lawyer would either be appointed by the other circuit judge, Judge Powell, or myself. This hearing today is not to appoint a lawyer, but to explain to you your rights. You also have a right, a privilege, under the Constitution, against self-incrimination; that is, you do not have to say anything to the court today or any other time, or any officers of the law or anybody, say anything that might tend to incriminate you; that is, something that might connect you with these offenses. You don't have to say that, you understand. You can claim your privilege against self-incrimination. You can claim you don't want to say anything and you have a right to that. * * *"

On the same occasion the following transpired:

"Now, I have already explained to you that for your own safekeeping I propose to transfer you to Kilby Prison,

and if you have a lawyer that your family wants to engage or hire, that lawyer can see you there. I will see that you are available to him. If a lawyer has to be appointed for you, then he will be given opportunity to visit you and to consult with you. Do you understand that?

"MR. BOULDEN: Yes, sir.

"THE COURT: Do you understand what I have said to you?

"MR. BOULDEN: Yes, sir.

"THE COURT: What I have explained to you?

"MR. BOULDEN: Yes, sir.

"THE COURT: Do you have any questions you want to ask me?

"MR. BOULDEN: No, sir.

"THE COURT: You understand you don't have to say anything that would tend to incriminate you, and anything you do say could be used against you in court. Do you understand that?

"MR. BOULDEN: Yes, sir.

"THE COURT: Now, I want to ask you this. If the law enforcement officers have mistreated you in any way. Have they physically hurt you in any way?

"MR. BOULDEN: No, sir.

"THE COURT: Have they threatened you or beat you or anything like that?

"MR. BOULDEN: No, sir.

\*  \*  \*  \*  \*  \*
"THE COURT: \* \* \* I would advise you not to make any decision about your future course in court until you talk to your lawyer. \* \* \*"

Thereafter the Court made the following statement to those present:

"\* \* \* Now, you all understand you have a right to engage a lawyer

for him. If you do not do that we will have to appoint a lawyer for him, but he won't be a lawyer of your choice, because if you want one of your own choice you have to engage your own, and I would advise you, if you are able, that you do so as soon as possible. You can see about that today, and we will try to co-operate with your lawyer in making him available to him at all times, \* \* \*."

As we have heretofore shown, despite the advice given by Judge Bloodworth, neither Boulden nor his family sought to obtain the services of a lawyer, nor did Boulden request a lawyer before making the confession. Hence, we say again that the holding in Escobedo does not apply to this case under the "totality of circumstances" doctrine or otherwise.

We hold that the evidence does not support a finding that the confession was coerced.

After Watts had testified as to the confession made by Boulden at the scene of the crime on the afternoon of May 6th, counsel for Boulden on re-cross examination elicited from him testimony to the effect that a tape recorder was used at the scene of the crime while the confession was being made "to reduce the confession to a tape at the time it was actually uttered." Watts was then questioned by the State Solicitor concerning the use of the recorder. Watts said that he heard the entire conversation as it went on the tape and stated that unknown to Boulden, he had an "FM wireless microphone with him with which to broadcast to a receiver." The conversation was then put on a tape recorder from the receiver. The State thereupon offered in evidence a "transcription" of a part of the statement made by Boulden on the afternoon of May 6th at the scene of the crime. The "transcription" was shown to have been made from the tape recorder under Watts' supervision. Boulden's counsel objected to the introduction of the transcription on the sole ground that Boulden was not aware of the presence of the

microphone. The objection was overruled and a copy of the "transcription" was admitted in evidence and read to the jury by the witness Watts.

The State then introduced in evidence without objection a copy of a "transcription" of another part of the conversation or statement made by Boulden on the afternoon of May 6th at the scene of the crime. It was shown to have been made at a place different from that where the first conversation occurred. The witness Watts read that statement to the jury.

Watts was later recalled to the stand in connection with the State's effort to have the tapes played before the jury. Before permitting this to be done the trial court excluded the jury from the courtroom and the trial judge, counsel for the State and for Boulden, and the court reporter went to a witness room where the tapes were played. After the playing of the tapes outside the hearing of the jury, counsel for Boulden objected to them being played in the hearing of the jury on the following grounds: (1) The recordings were not taken voluntarily; (2) Boulden was not aware of the presence of the microphone which was secreted on the person of the witness Watts; (3) that a portion or portions of the recordings were inaudible and not understandable. The trial court overruled the objection. The trial judge, counsel for the State and for Boulden, and the court reporter returned to the courtroom, as did the jury. The two tapes were then played in the presence of the jury.

■ There is no merit in the contention that the statements made by Boulden which were transmitted through the microphone to the receiver and thence to the recorder were not shown to have been made voluntarily if we are correct in our holding that the record before us shows that the confession as testified to by Watts and Williams was made voluntarily, inasmuch as the tape recording was but the actual statements made by Boulden which were summarized in the testimony of Watts and Williams. The predicate which was laid for the introduction of the testimony of Watts and Williams in regard to the confession served to show the voluntary character of the recorded confession or statements.

■ Nor were such statements inadmissible simply because Boulden at the time he was making them did not know that Watts had a microphone concealed on his person. See State v. Alleman, 218 La. 821, 51 So.2d 83; State v. Lorain, 141 Conn. 694, 109 A.2d 504; People v. Bodkin, 196 Cal.App.2d 412, 16 Cal.Rptr. 506; Goldman v. United States, 316 U.S. 129, 62 S.Ct. 993, 86 L.Ed. 1322; On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270. Boulden was not entrapped or tricked to make the statements. He was perfectly aware of the effect of what he said and he had been told it could be used against him in court. Moreover, there could be no prejudicial error in this matter for, as shown above, Watts testified that he was present during the recordings and he further testified that the tape as played was what he heard. People v. Bodkin, supra.

■ The trial court did not err in overruling the objection interposed to the playing of the tapes in the hearing of the jury on the ground that a portion or portions of them were unaudible. The transcriptions which were introduced in evidence show that in only four instances was a stenographer unable to understand what was said. When these transcriptions are considered in their entirety in connection with the testimony of Watts and Boulden's testimony, we cannot see how Boulden could have been hurt by the playing of the tapes in the hearing of the jury. State v. Salle, 34 Wash.2d 183, 208 P.2d 872; Lindsay v. State, 41 Ala.App. 85, 125 So.2d 716, petition for cert. stricken, 271 Ala. 549, 125 So.2d 725. The trial judge, as we have heretofore shown, heard the tapes played outside the presence of the jury and decided that they were sufficiently audible to be played in the hearing of the jury. We hold that reversible error is not made to

appear in the trial court's rulings in permitting the transcriptions to be admitted in evidence and the tapes to be played in the hearing of the jury.

In this case the trial court passed on the question as to the voluntariness of the confession outside the presence of the jury when a request was made for that procedure to be followed, so we do not think there was a violation of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908.

■ But at the hearing to determine the voluntariness of the confession outside the hearing of the jury, the trial court refused to permit Boulden to testify as to the facts and circumstances surrounding the taking of the confession without thereby subjecting himself to cross-examination as to matters pertaining to guilt or innocence, sanity or insanity. In so ruling the trial court followed the holding of this court in Fikes v. State, 263 Ala. 89, 81 So.2d 303. Boulden's trial was held before our decision in Duncan v. State, supra. In the opinion in the case last cited we did not expressly overrule Fikes v. State, supra, as to that point but we think the opinion has that effect. If this case had been tried after Duncan v. State, supra, was decided and if the trial court had followed the procedure which we suggested where a request is made that the trial judge determine the voluntariness of the confession away from the jury, then Boulden would have been permitted to take the stand and testify for the limited purpose of giving his version of the facts and circumstances surrounding the taking of the confession without waiving his right to decline to take the stand in his own defense on the trial in chief or waiving any other right stemming from his choice not to testify.

But we do not think that the ruling of the trial court here under consideration should work a reversal, although the holding in Fikes v. State, supra, to which we have alluded above and which the trial court, no doubt, considered binding, is no longer to be followed.

Boulden became a witness in his own behalf and testified substantially in accordance with his confession. He did not claim that he had ever been mistreated in any way. He did say, in substance, that on the afternoon of May 1, 1964, at the scene of the crime, Captain Williams told him that some of the policemen did not like what had happened, wanted to do something about it, wanted to kill him, and that the only way Williams could get him out of there alive was for him to confess. But the confession did not come until May 6th and was entirely unconnected with the statement which Boulden says Williams made on May 1st, and cannot be considered as an inducement to the confession. State v. Jacques, 30 R.I. 578, 76 A. 652. If the alleged statement of Williams was the only thing upon which Boulden could rely as an inducement to the confession, and we assume it was, then it is clear that the trial court would not have reached a different conclusion concerning the voluntary character of the confession if Boulden had testified at the hearing held outside the presence of the jury for the purpose of determining that question.

If the holding of the Supreme Court of the United States in Motes v. United States, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150, is still the law, then the conclusion we have reached above will withstand the onslaughts of the federal courts. We say the same about Wheeler and Patton v. United States, 82 U.S.App.D.C. 363, 165 F.2d 225, cert. denied, Patton v. United States, 333 U.S. 830, 68 S.Ct. 448, 92 L.Ed. 1115. Neither of the cases last cited above has been expressly overruled in so far as we are advised, but they may have been overruled sub silentio in Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. We are not certain of the full import of the Fahy case, supra.

We are familiar with recent decisions of the Supreme Court of the United States which hold, in effect, that if a coerced or compelled confession is introduced at the trial, a judgment of conviction will be set aside even though the evidence, apart from

the confession, might have been sufficient to sustain the jury's verdict. Lyons v. State of Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481; Malinski v. People of State of New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Stroble v. State of California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872. Whether the rule of those cases applies to a judicial confession we do not know. It is our view that we have not said anything that runs counter to that rule. We have found the confession to have been voluntarily made. We are not here saying that error in admitting an involuntary confession was cured by the admissions of Boulden as a witness in his own behalf. We are saying that the record before us supports no reasonable conclusion but that the trial court would have made the same ruling concerning the voluntariness of the confession if Boulden had testified at the hearing held outside the presence of the jury.

We will observe that this court, along with others, has applied the harmless error doctrine to assertions made that the introduction of evidence of confessions should not work a reversal where the defendants had taken the stand and given testimony substantially in the language of the confessions. Wheeler and Patton v. United States, supra; Dyer v. State, 241 Ala. 679, 4 So.2d 311; Smith v. State, 253 Ala. 220, 43 So.2d 821; Hardie v. State, 260 Ala. 75, 68 So.2d 35; Commonwealth v. McNeil, 328 Mass. 436, 104 N.E.2d 153; McKnight v. State, 171 Miss. 152, 157 So. 351; People v. Combes, 56 Cal.2d 135, 14 Cal.Rptr. 4, 363 P.2d 4; State v. Freeman, 232 Or. 267, 374 P.2d 453; State v. Fouquette, 67 Nev. 505, 221 P.2d 404. The cases just cited are all death cases. The cases from this and other jurisdictions which have applied the same rule in non-death cases are legion. However, it may be that those cases have been or will be overturned by the Supreme Court of the United States in keeping with what seems to be a determination to set aside practically all convictions where a confession is involved, particularly where the death sentence is imposed.

The case of Hamilton v. State of Alabama, 364 U.S. 931, 81 S.Ct. 388, 5 L.Ed.2d 364, may be an indication that the Supreme Court of the United States will not permit the application of the harmless error doctrine in a capital case.

### Insanity

As excuse for the crime, the burden was on Boulden to prove clearly to the reasonable satisfaction of the jury that he was so afflicted by disease of the brain when the offense was committed as to render him so insane that he did not know right from wrong with respect to the particular offense charged, or by reason of such mental disease he could not resist doing the wrong; and the crime must have been the product solely of such mentally diseased condition. Aaron v. State, 271 Ala. 70, 122 So.2d 360, and cases cited.

The issue, therefore, of insanity as excuse for the crime was for the determination of the jury. This issue was determined adversely to Boulden. We think the verdict was well founded. The testimony offered by Boulden to support his plea of not guilty by reason of insanity was that of himself and his mother that he had been nervous and was subject to having fainting spells and fits.

Duly mindful of our duty in cases of this character, we have carefully examined the record for any reversible error, whether pressed upon our attention or not. We have here dealt with all questions calling for treatment. We find no reversible error in the record and the cause is due to be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and GOODWYN, MERRILL, COLEMAN and HARWOOD, JJ., concur.