# Heninburg v. The State.

## Murder.

(Decided May 9, 1907. 43 So. Rep. 959.)

1. *Homicide; Evidence; Dying Declarations; Predicate.*—Where the evidence disclosed that deceased, on being asked if she knew that she was fatally wounded, replied that she did and that she was

[Heininburg v. The State.]

going to die, a sufficient prediacte was laid for the admission of her statements as dying declarations.

2. *Same; Appeal; Harmless Error; Exclusion of Evidence.*—It appearing that the witness never saw defendant under the influence of liquor, it was harmless error to refuse to allow such a witness to state what defendant's condition was as to being flighty when very much under the influence of liquor.

3. *Same; Intoxication; Evidence.*—The defendanant's mere drunkenness at the time of the homicide being relied on to reduce the decree and there being no pretense that he was insane from drink, evidence as to how often he got drunk is immaterial.

4. *Same; Threats.*—It is competent to prove that before the killing defendant threatened to kill deceased.

5. *Witnesses; Cross Examination.*—A witness may be asked on cross examination if he did not tell a certain other person who had been called as a witness not to tell anything about the affair.

6. *Evidence; Rebuttal.*—Where drunkenness was relied on to reduce the degree of guilt, it is competent to show in rebuttal by a witness that he saw defendant soon after the homicide was committed and that he was apparently sober.

7. *Homicide; Manslaughter in the Second Degree.*—If there is a want of intention or wilfulness to do an unlawful act causing death, which results from a mental status incapable of forming the intent or purpose to do the act, the homicide is reduced to manslaughter in the second degree, although such mental status was produced by drink.

APPEAL from Mobile Circuit Court.

Heard before Hon. O. J. SEMMES.

Antwine Heninburg was convicted of murder in the 2nd degree and appeals. Reversed and remanded.

Antwine Heninburg was indicted and tried for the unlawful killing of Florence Heninburg by shooting her with a pistol. Dr. Jones was introduced by the state, and testified that he was called to see her, and that her death was caused by a pistol bullet; that he was not present when the woman died, but that the wound was necessarily fatal. "Deceased made a statement after I got there, saying she believed she would die. Her mind seemed clear and normal." The state then asked the itness, "What did she say, doctor?" Objection was interposed to the question by defendant on the ground that no sufficient predicate had been laid for the testimony and because same was irrelevant, illegal, and im-

material. The witness answered: "She said that her husband came home and began cursing and abusing her, and that she attempted to leave the room several times. and the last time he called her back, and when she turned around he shot her, saying that they both had to die. together that night." On cross-examination it was shown that the witness asked deceased if she knew she was fatally wounded, and she said she did, and that she knew she was going to die. This testimony was reduced to writing and sworn to before a justices of the peace, and was offered in evidence and admitted. The other facts sufficiently appear from the opinion of the court.

The court, in its oral charge, charged upon drunkenness·as applicable to murder in the first and second degrees ,and charged that drunkenness will not reduce a homicide below manslaughter in the first degree, to which an exception was reserved. The defendant also requested a number of charges, which were refused, among them the following: "(C) If the jury believe that the defendant, at the time he is said to have shot his wife, was so drunk that he was incapable of forming the purpose to do a voluntary act, then he cannot be convicted of any offense higher than manslaughter in the second degree. (D) If the jury find that the defendant was too drunk to perform a voluntary act, then he cannot be convicted of anything more than manslaughter in the second degree. * * * (G) If the defendant was so drunk that he was incapable of volition, incapable of voluntarily doing anything, and incapable of entertaining malice, then the defendant cannot be convicted of anything more than manslaughter in the second degree." The defendant was found guilty of murder in the second degree, and sentenced to 20 years in the penitentiary.

McALPINE & ROBINSON, for appellant.—It was permissible to show the condition of defendant when under the influence of whiskey.—*Thornton v. The State,* 113 Ala. 23; *Miller v. The State,* 107 Ala. 40; *James v. The State,* 104 Ala. 20; *Jenkins v. The State,* 82 Ala. 28; *Carney v. The State,* 79 Ala. 14; *S. & N. R. R. Co. v. McLendon,* 62 Ala. 266. The court erred in its oral charge to the jury.—*King v. The State,* 90 Ala. 612; *Lewis v. The State,* 96 Ala. 10; *Cates v. The State,* 50 Ala. 166; *Smith v. The State,* 68 Ala. 424; *Fitzgerald v. The State,* 112 Ala. 124; *Thompson v. The State,* 131 Ala. 18; *Farnell v. The State,* 129 Ala. 15. On the same authorities the charges requested by defendant should have been given.

ALEXANDER M. GARBER, Attorney General, for the State.—No brief came to the Reporter.

DOWDELL, J.—The predicate for admission in evidence of dying declarations was sufficiently made, and the court committed no error in its ruling on this question.

On the cross-examination by the defendant's counsel of the state's witness Seabury, the witness was asked the following question: "When he (meaning the defendant) was very much under the influence of whiskey, what was his condition as to being flighty in any way?" An objection by the solicitor was sustained to the question. Without determining whether the evidence sought to be elicited was admissible, it is sufficient to say that the witness answered the question, saying, "I never saw him much under the influence of liquor, however," and consequently the witness was not competent to testify what was the defendant's condition when very much under the influence of whisky. While we do not mean to

intimate that the court ruled erroneously, still, if there was error, it was harmless.

There was no pretense that the defendant was insane from drink, and the question, therefore, as to how often he got drunk, was immaterial and unimportant.

It was competent for the state to prove by the witness Joseph Heninburg that the defendant had, before the killing, threatened to kill the deceased. It was also competent for the state, on the cross-examination of this witness, to ask the witness if he did not tell Nathan, who had been called as a witness in the case, "not to tell anything about this affair." And it was likewise competent for the state to show by the witness Dr. Jones, in rebuttal, that when he got to the house where the killing occurred, in a short time after it happened, he saw the defendant, and that he was then apparently sober.

The court, in its oral charge to the jury, refused to charge them as to manslaughter in the second degree, and also refused written charges, requested by the defendant, relative to this degree of homicide; that is, manslaughter in the second degree. The law is too well settled to admit of question that drunkenness may never excuse or justify a homicide, yet, when it exists to the degree that it renders the person incapable of entertaining malice or of forming an intent to kill, may reduce the homicide from murder to manslaughter. It is not necessary that the intent to kill should be present to constitute manslaughter in the first degree.

If a person willfully or intentionally and unlawfully committ a battery upon another in a manner or with means likely to produce death, and death results from such willful or intentional act, in the absence of malice, this would constitute manslaughter in the first degree, notwithstanding there be no particular intent to kill. The law presumes one to intend the natural and prob-

able consequences of his act. Written charges requested by the defendant, numbered from 1 to 5 inclusive, were properly refused. If, however, there is a want of intention or willfulness in the doing of the unlawful act causing the death, resulting from a mental status incapable of forming an intent or purpose to do the act, although produced by drunkenness, there is then an absence of an essential element of manslaughter in the first degree. And in such case, the homicide, being unlawful, but neither malicious nor intentional, would be manslaughter in the second degree under the statute. Under the evidence in this case, written charges C, D, and G, requested by defendant, not being abstract, under the principles above stated, should have been given, and the court erred in their refusal.

For the errors pointed out, the judgment must be reversed.

Reversed and remanded.

TYSON, C. J., and ANDERSON and McCLELLAN, JJ., concur.