165 So. 840

## STEWART v. STATE.

### 3 Div. 152.

Supreme Court of Alabama.

Jan. 30, 1936.

Rehearing Denied March 5, 1936.

Jos. J. Levin and W. M. Blakey, Jr., both of Montgomery, for appellant.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws and Wm. H. Loeb, Asst. Attys. Gen., for the State.

**BROWN, Justice.**

The appellant was convicted of murder in the first degree and sentenced to death.

The evidence offered by the state goes to show that on August 5, 1934, between 2 and 3 o'clock in the afternoon, the defendant went to the home of Hannah Langford to see Ella Owens, a daughter of the deceased, who had been living with the defendant, though not married to him, and, on being ordered to leave the house by the deceased, forced his way through the door and shot Hannah two or three times with a pistol, inflicting the wounds on her person from which she died about 11 o'clock p. m. of the same day; that the defendant and Ella had had a difficulty about 12 o'clock, some two or three hours previous to the shooting of the deceased, and Ella had left defendant at the place where they lived and gone to Hannah's house.

The defendant's version of the killing is as embodied in a confession, made after his arrest, on March 15, 1935, in which he said "Me and my wife, Ella Langford, had an argument during the morning, and she left our home at 14 Carpet Street, and went to her sister's home at 12 Glass Street. I went up there to get some money from her, and I knocked on the door, and her sister, Mattie Cunningham, asked me in. I went in and asked Mattie where was my wife; she told me she was in the other room, sleep. At the time I entered the house, my wife's mother, Hannah Langford, was standing across· the street talking to another woman. When she saw me go in·the house, she ran over and come in the house. Her daughter, Mattie Cunningham, stepped out the front door and slammed it. Hannah asked me what did I want. I told her I came up there after some money from my wife. She told me I was not going to get any money, but I was going to get the h—— of a fight. She took an ice pick off the table in the front hall and started towards me. The lock on the door had slammed and fastened and I could not get out the door. I told her to get back, but she kept coming on me, and I pulled my pistol out of my pocket and shot her two or three times."

The defendant offered evidence tending to show that he was drinking to·excess from an hour to two hours before the homicide was committed; but there is no evidence that he was drunk at the time of the shooting. In making this statement, we have not overlooked the statement in the testimony of Ella Owens, on cross-examination, "Jimmie had been drinking," but the evidence is without dispute that Ella did not see appellant at the time or immediately before the shooting. She had not seen him since 12 o'clock, noon, of that day, and this statement unquestionably had reference to the defendant's conduct at or prior to the time she left him to go to the home of her mother.

■ The appellant's first contention is that the oral charge of the court erroneously failed to charge the jury in respect to murder committed in a sudden rencounter or in the heat of passion. This contention is without merit, in the absence of exceptions to the oral charge, or such parts thereof as were deemed omissive and insufficient. McPherson v. State, 198 Ala. 5, 73 So. 387; Peterson v. State, 227 Ala. 361, 150 So. 156.

■ In the absence of evidence showing that the defendant was drunk at the time he shot the deceased, it is not permissible for him to show that he was drunk or drinking several hours before the homicide. That was, in substance, what the defendant proposed to show by the witness

Autrey, who was with the defendant the night before the day of the homicide. It may be conceded that, if the evidence showed that the defendant at the time of the homicide was drunk, it would be permissible to show that he had been in such condition for some time previous; this for the purpose of showing that he was intoxicated to such degree as to render, him incapable at the time of the killing of premeditation or forming a specific intent. Mitchell v. State, 210 Ala. 457, 98 So. 285; James v. State, 193 Ala. 55, 69 So. 569, Ann.Cas.1918B, 119; Sharp v. State, 193 Ala. 22, 69 So. 122; Heninburg v. State, 151 Ala. 26, 43 So. 959.

 The predicate for the admission in evidence of the defendant's confession was not sufficient, in that it did not show that it was not brought about by threats or abuse made or inflicted by others than the witness Powell, or by reward or the hope thereof so offered or held out by persons other than the witness. Confessions are presumed to be involuntary, and the burden was on the state to show that the confession was voluntary. Jackson v. State, 226 Ala. 72, 145 So. 656; Bates v. State, 222 Ala. 688, 133 So. 914.

The court therefore erred in admitting the confession, but, in view of the undisputed evidence showing that the defendant unlawfully killed the deceased and that the confession was the only evidence tending to show any extenuating circumstances, we are of opinion that the error committed by the court, when considered in the light of the entire record, was without injury to the appellant.

The testimony of the witness Ella Owens, showing that witness and defendant had a difficulty about 12 o'clock, and that defendant did not then have a pistol, in connection with the subsequent conduct and declarations of the defendant, referring to the occupants of the house in which the shooting occurred, "I will kill you sons-of-bitches," was properly admitted as tending to show malice and shedding light on defendant's subsequent acts in going to the place of the homicide armed with a pistol. Martin v. State, 77 Ala. 1; Ellis v. State, 120 Ala. 333, 25 So. 1. This evidence also justified the solicitor's statement in argument, in substance, that the defendant armed himself and went to the place of the homicide, after the difficulty between himself and Ella Owens.

We are not able to affirm that the verdict of the jury is not supported by the evidence. The motion for a new trial was overruled without error. We find no reversible error in the record, and the judgment is due to be affirmed. It is so ordered by the court.

Affirmed.

All the Justices concur, except ANDERSON, C. J., not sitting.