214 So.2d 306

**Leroy CHANDLER, alias Leroy Crawford**

**v.**

**STATE of Alabama.**

**7 Div. 790.**

Supreme Court of Alabama.

Sept. 12, 1968.

Jack Floyd, Gadsden, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

MERRILL, Justice.

Appellant was convicted of murder in the first degree and was sentenced to life imprisonment in the penitentiary. He was charged with killing Amos Jackson by stabbing him with a knife.

The State's evidence tends to show that the appellant stabbed and killed Amos Jackson in front of the Bird Cage Cafe in Gadsden, Alabama, on the afternoon of September 24, 1966.

The evidence shows that earlier that day, Jackson had been over to appellant's mother's home threatening to kill appellant and his mother. When appellant found out about the threats he, along with Blufus Russell, left in an automobile and went looking for Jackson. Appellant was armed with a double barrel shotgun and a knife.

They found Jackson and one Willie B. Ashford sitting in Jackson's car which was parked in front of the Bird Cage Cafe. Appellant and Russell got out of their car and approached the deceased. After exchanging words, the appellant shot Jackson in the left leg with a shotgun. At the time of the shooting Jackson was still in his car. Appellant testified that he shot Jackson because he thought Jackson was reaching for something in the car. After Jackson was shot, Willie Ashford got out of the car and sought to take the shotgun from the appellant. He failed and was chased down the street by the appellant.

When appellant returned to the car, Jackson had already gotten out and was standing next to it. Appellant testified that Jackson threatened him and started toward him. At this time, appellant stabbed Jackson in the neck. The stab wound caused Jackson's death.

After the fight with Jackson, appellant and Russell left and returned to appellant's mother's house. The shotgun and the knife used by the appellant were given to two other people to keep.

After appellant was arrested, he confessed to killing Amos Jackson. This confession was later introduced at the appellant's trial.

The defense sought to establish that the killing was done in self-defense.

The appellant's evidence tended to show that the deceased had previously threatened to kill him and his family. The evidence also tends to show that appellant had a bad reputation in the community, and that he had a bad reputation for bloodthirstiness and violence.

The appellant took the stand and offered evidence in his own behalf. His testimony tended to show that he was looking for Jackson for the purpose of getting him to leave his family alone. He stated that he shot deceased because he thought deceased

was going for something in the car. He further testified that he stabbed deceased only when deceased advanced on him.

After establishing a corpus delecti, and the presenting of an eye witness to the shooting and stabbing, and it being apparent that the State would attempt to introduce an alleged confession, the jury was excused and police officers Sam Bankson and J. W. Hollingsworth of the Gadsden Police Department testified.

Their testimony tended to show that the appellant was arrested and immediately told that he was being charged with murder, first degree. He was then taken to the City Hall in Gadsden, Alabama, where only the appellant and police officers were present. There he was told that he did not have to make a statement and was told that he had a right to have an attorney present if he did want to make a statement and that if he could not get an attorney himself that the Police Department would get one for him. Again at the City Hall he was told that he did not have to make a statement but if he did want to make a statement, he had the right to have an attorney present when he made that statement.

When first asked about an attorney appellant did not answer, but after being asked the second time, the officers testified that appellant told them that he did not need a lawyer to make a statement, and that he had nothing to hide.

Appellant testified that the officers kept telling him that he had to make a statement, and that he told the officers his mother would get him a lawyer but that the officers kept insisting that he had to make a statement, so he did.

The officers admitted that there were no police rosters or other procedures set up by the Police Department of the City of Gadsden for obtaining an attorney for any accused person.

On the next day, a Sunday, a statement was taken from the appellant. Testimony indicated that one of the officers wrote out the statement but not in the exact words of the appellant.

The alleged confession, signed by appellant, started off as follows:

"DATE Sept. 25, 1966 TIME 8:50 AM PLACE Detective dept. city of Gadsden I, Leroy Chandler , am 24 years of age and my address is 1006 Ave. A

I have been duly warned by J. W. Hollingsworth , who had identified himself as Detective, city of Gadsden.

that I do not have to make any statement at all, and that any statement I make may be used in evidence against me on the trial for the offense concerning which this statement is herein made. Without promise or hope of reward, without fear or threat of physical harm, I freely volunteer the following statement to the aforesaid person: I have also been advised by the officers

"that I have a right to remain silent and that they are required by the constitution to advise me of these rights. Any statement that I make can and will be used against me in court. I have also been advised that I have a right to talk to an attorney before I make a statement and if *and if* I do not have an attorney I will be furnished one. I have had these rights explained to me and I fully understand them."

The remainder of the confession reads:

"On Sat. evening I was at my girls f[r]iends house on Evans St and Blufus *r*ussell sister came there and told me that Amos Jackson was at my mothers house messing with her and she wanted me to come home. I went to her house on Ave A but Amos had already left. Blufus was there when I got to the house. Mama told me that Amos had been there bothering her. This was the third time he had done this and Mama is

sick and not able to put up with this so I told her I was going to find him and put a stop to it. I got my shot gyn and me and Blufus got in my car and drove up on 9th St. We saw Amos parked if front of the Bird cage cab stand. I parked on the right side of the street and we got out and walked over to the drivers side of Amos car. I don't know for sure who opened the door to the car. I asked Amos what he had been doing over the[re] messing with my mama. He said, 'what are you talking about boy?' He then started sliding back across the seat and had his hand hanging down by the seat. I don't know if he was getting some thing out from under the seat or not. I told him to sit up but he kept sliding back in the seat so I shot both barrels of my gun at the same time toward his legs. Then Willie B. Ashford who was sitting in the car with Amos got out and came around the car to me and said I had shot him. I told [him] I would kill him if he messed with me. I tried to hit Willie with the gun but I missed him I also tried to cut him but I don't think I hit him with the knife. He then ran and I walked back to Amos. He said something to me. I don't know what he said. He was standing with one arm on the car and the other hand in his pocket. I stabbed him in the neck with my knife. He was still standing by his car and me and Blufus went and got in my car and went back to my mama's house. I carried my gun over across the St and gave it to some one there to keep. Me and Blufus then went up on Evans St to my girl friends house and she went with us down to Blufus house. While we were there someone called and said the detectives were at my house. We told them to wait and we would come on back down there. We went back to my house and they arrested us and put us in jail.

"Before we left my house to go to Jail I went over to the house across the st with Chief Payne and got the shot gun and gave it to him.

"I have read this statement consisting of 1 page(s) and the facts contained herein are true and correct.

s/ Leroy Chandler

Signed by the arrested Party Page 1 of 1 pages.

"WITNESS s/ J. W. Hollingsworth

"WITNESS s/ J. S. Bankson"

After hearing the testimony outside the presence of the jury, the trial court ruled "that he (appellant) voluntarily gave the statement."

The jury was recalled, the confession was introduced in evidence over objection of appellant's then attorneys, different from counsel on appeal.

Appellant argues only one point on appeal and we think this is the only question requiring discussion—whether the trial court erred in ruling that the confession was admissible.

Appellant's argument is based on the contentions that "the accused did not intelligently and understandingly reject an offer of counsel" and that "If we are serious in wanting to advise a suspect of his constitutional rights, then the police officers are not the ones to do it."

■ As to the first contention, we think the record clearly shows an intelligent waiver by appellant of his right to counsel. As to the second, that is not yet the law.

But one point, not raised by appellant, requires discussion. Apparently, the district attorney was so intent in showing that all of appellant's constitutional rights had been fully explained to appellant, he overlooked showing by either officer Bankson or officer Hollingsworth that the confession was voluntary. But while officer Hollingsworth was on the stand, the trial court questioned him as to promises of rewards, whether appellant was told that it would be better or worse for him to make the statement or whether he was struck or touched in any manner. The officers had

already testified that they had read to appellant and had asked him to read the preliminary part of the confession which is quoted supra. This was sufficient to show the voluntariness of the statement so far as officer Hollingsworth was concerned, but not one at any time asked either Hollingsworth or Bankson if "anyone in their presence" made any promises, threats, etc., when the evidence shows conclusively that both officers were present when the confession was made.

In Stewart v. State, 231 Ala. 594, 165 So. 840, we held that the court erred in admitting a confession because the predicate for its admission in evidence was not sufficient, in that it was not shown that the confession was not brought about by threats or abuse or by reward or hope thereof inflicted or held out by persons present other than the witness testifying. However, it was held that the error was not prejudicial under the circumstances of that case.

Here, the appellant took the stand and gave testimony substantially in the language of the confession.

In Boulden v. State, 278 Ala. 437, 179 So.2d 20, we said:

"We will observe that this court, along with others, has applied the harmless error doctrine to assertions made that the introduction of evidence of confessions should not work a reversal where the defendants had taken the stand and given testimony substantially in the language of the confessions. Wheeler and Patton v. United States [82 U.S.App. D.C. 363, 165 F.2d 225]; Dyer v. State, 241 Ala. 679, 4 So.2d 311; Smith v. State, 253 Ala. 220, 43 So.2d 821; Hardie v. State, 260 Ala. 75, 68 So.2d 35; Commonwealth v. McNeil, 328 Mass. 436, 104 N. E.2d 153; McKnight v. State, 171 Miss. 152, 157 So. 351; People v. Combes, 56 Cal.2d 135, 14 Cal.Rptr. 4, 363 P.2d 4; State v. Freeman, 232 Or. 267, 374 P.2d 453; State v. Fouquette, 67 Nev. 505, 221 P.2d 404. The cases just cited are all death cases. The cases from this and other jurisdictions which have applied the same rule in non-death cases are legion. * * *"

The instant case is not a death case and we think the rule cited in *Boulden*, supra, requires us to hold that no reversible error was committed by the trial court in connection with the admission of the confession in evidence since appellant gave testimony substantially in the language of the confession.

A confession is not rendered involuntary because it is not verbatim as related by the prisoner, and if its transcription is substantially as related and affirmed by the prisoner as correct, it is admissible. Dennison v. State, 259 Ala. 424, 66 So.2d 552.

The fact that no special roster of attorneys was kept at police headquarters does not equate that no attorney could be obtained to counsel an accused if he requested counsel.

We find no reversible error in the record.

Affirmed

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.