261 So.2d 57

**Artie Bell MILLER**

v.

**STATE.**

**8 Div. 170.**

Court of Criminal Appeals of Alabama.

April 11, 1972.

Sherman B. Powell and Ralph E. Slate, Decatur, for appellant.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

PER CURIAM.

This appeal is from a conviction of murder in the first degree with a sentence of imprisonment for life.

The appellant pled not guilty and sought to defend under the doctrine of self-defense. However, she did not testify nor offer any witnesses in her defense.

Her motion for a new trial was overruled.

The testimony offered shows that at approximately 9:10 or 9:15 P.M. on February 8, 1970, Decatur Police Detective Tallent and Lt. Shafer were called to the home of the appellant at 1115 Brook Street in Decatur. Upon entering the front room they found the body of Willie McDaniel lying face down on the floor with his head toward the front door and there was a large pool of blood under his face and throat. The body was some five or six feet from the front door and his wife was sitting on a couch. Just behind this room was a dining room and then the kitchen where the appellant was when the officers arrived. Her son was in one of the bedrooms. No knife nor

weapon was visible when the officers first saw the body but when it was turned over a small pocket knife was found with an open blade. Several photographs of the body were made before it was taken by ambulance to a funeral home. Later, after the arrest and incarceration of the appellant in jail, the officers returned to the house and found a butcher knife behind a bicycle on the front porch. On the knife was blood which had partially dried.

Witness Tallent testified that in the kitchen the appellant, after being warned of her *Miranda* rights, told him she had stabbed the deceased. Later at the city jail the witness claimed appellant in the presence of the coroner and himself made both a verbal and written signed confession, after having been told again and having had her right to remain silent, etc., read to her, and stated that she understood. The written confession went into detail about the deceased coming to her house, buying some whiskey and then leaving for a few minutes. In the meantime, the wife of deceased had come in and the deceased along with a man named Thomas came back to get more whiskey. He drank some and an argument arose over his failure to pay and he denied owing her anything, using some profanity. She pushed him and picked up a butcher knife which Thomas tried to take from her, but did not, and tried to get deceased to pay appellant. The deceased said she did not have the guts to stab him and pushed her. She then stabbed him and he went toward the front room where he fell and did not get up and died from the effects of the wound. Appellant called the police from the house of a neighbor.

The statements by the appellant, both oral and written, made to the officers while she was in custody that she had stabbed the deceased were objected to when offered. The appellant argues that the court erred in overruling her objections to this evidence under the well known doctrine laid down in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. No contention is made on appeal concerning the pre-*Miranda* predicate.

The written confession, State's Exhibit No. 9, appears in the record as follows:

"VOLUNTARY STATEMENT
(UNDER ARREST)

"DATE 2–8–70          TIME 10:45
          PLACE Decatur City Hall

"I, Artie Miller, am 35 years of age and my address is 1115 Brooks St. I have been advised and duly warned by Det. Jep Tallent who has identified himself as Det. for City of Decatur of my right to the advice of counsel before making any statement, and that I do not have to make any statement at all, nor incriminate myself in any manner.

"I hereby expressly waive my right to the advice of counsel, and voluntarily make the following statement of the aforesaid person, knowing that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made.

"I declare that the following statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of lenience, by any person or persons whomsoever.

"Sometimes when I get in a tight I sell whiskey. On 2–8–70 I had come home from church at approx. 7:00 P.M. or a few minutes after. My son (Frank Miller) was at home at this time but was asleep. I had been home approx. 5 min. when someone knocked on my door. I was in the bath room and I yelled for them to come in. After I had yelled about 3 times Willie McDaniel came into the house. He saw that I was in the bath room and said that he would wait until I was finished. When I came out of the bath room he asked if I had anything to drink and I stated that I had a little. I also told him that I was going to sell out all that I had and that I was going to get married, that I was going to take my blood test this week. At this time he said that I was crazy. Then he said give me a half pint. I poured him a half

pint in a fruit jar. And he said that he was going to take his old lady a drink. I then poured the whiskey back into the pint bottle. And then someone knocked on the front door just as Willie was paying me for the whiskey. I went to the front door and his old lady, Maggie, was at the door. And she asked me if Willie was there.

"I have read this statement consisting of three pages, and I affirm to the truth and accuracy of the facts contained therein. This statement was completed at 11:45 P.M., on the 8th day of Feb., 1970.

"WITNESS Jep. H. Tallent /s/
"WITNESS John C. McBride /s/

> /s/ Artie Miller
>> Signature of person giving
>> voluntary statement

"(THE FOLLOWING IS PAGE 2 OF THE STATEMENT)

"VOLUNTARY STATEMENT

"(Under Arrest)

"DATE —— TIME —— PLACE ——
"I, ———————— am —— years of age. I have been advised and duly warned by Cont. who was identified himself as —— ———————— of my right to the advice of counsel before making any statement, and that I do not have to make any statement at all, nor incriminate myself in any manner.

"I hereby expressly waive my right to the advice of counsel, and voluntarily make the following statement to the aforesaid person, knowing that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made.

"I declare that the following statement is made of my own free will without promise of hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

"And I said Yes come in. She came in and said I told him not to come over here and she walked back and she met Willie coming from the kitchen and they had a fuss and got loud and I told them not to talk so loud. And then my cousin, Thomas Baker, came to the door and I told him to come in. Thomas told Willie that he wanted to talk to him that he wanted him to come outside. And I kept telling them to keep their voices down. And in a few min. Thomas & Willie left and were gone for a while. While all this was going on my son had got out of bed. About 5 min. later Willie & Thomas came back into the house. I was in the kitchen washing dishes and Willie came and ask for some more whiskey and I said Just a min. Willie then reached over the table and picked up a bottle of whiskey and drank almost all of it. I asked him to pay me and he said that he did not owe me any money that he had already paid me. And I said that he had paid me for the first whiskey but not for what he had just drank. At this Thomas tried to make him pay me and as Willie tried to pass me in the kitchen

"I have read this statement consisting of 3 pages, and I affirm to the truth and accuracy of the facts contained therein. This statement was completed at 11:45 P.M. on the 8th day of Feb., 1970.

"WITNESS: Jep H. Tallent /s/

"WITNESS: John C. McBride /s/

> "/s/ Artie Miller
>> "Signature of person giving
>> voluntary statement

"(THE FOLLOWING IS PAGE 3 OF THE STATEMENT)

"VOLUNTARY STATEMENT

(Under Arrest)

"DATE —— TIME —— PLACE ——
"I, ———————— , am —— years of age. I have been advised and duly warned by Cont. who has identified himself as —— ———————— of my right to the advice of counsel before making any statement, and that I do not have to make any state-

ment at all, nor incriminate myself in any manner.

"I hereby expressly waive my right to the advice of counsel, and voluntarily make the following statement to the aforesaid person, knowing that any statement I make may be used against me on the trial or trials for the offense or offenses concerning which the following statement is herein made.

"I declare that the following statement is made of my own free will without promise or hope or reward, without fear or threat of physical harm, without coercion, favor or offer of favor, without leniency or offer of leniency, by any person or persons whomsoever.

"he said I don't owe you a Goddam thing and I am not going to pay you. I said you owe me $27.50 already and you will not pay me. And I pushed him and said you are going to pay me for this whiskey. And I then picked up a butcher knife from the cabinet drawer. When I picked up the knife Thomas tried to take it away from me. And I would not let him take it. Thomas then tried to get Willie to pay me again and Willie said that he would not and that I did not have the guts to stab him. He then pushed me and I stabbed him. Willie then started for the front door and I told Maggie to call the police. Willie walked to the front room and fell and when he did not get up or move, I went two houses down and called the police from Jimmie Baker's house. Willie did not pull a knife on me. I don't know if he even had one. This is the whole truth.

"I have read this statement consisting of 3 pages, and I affirm to the truth and accuracy of the facts contained therein. This statement was completed at 11:45 P.M. on the 8th day of Feb., 1970.

"WITNESS: Jep H. Tallent /s/

"WITNESS: John C. McBride /s/

"/s/ Artie Miller
"Signature of person giving voluntary statement."

State's witness, Tallent, testified that the written statement was taken at the City Jail at Decatur, about an hour and one-half after the arrest of appellant and that she was advised of her rights in detail and said she understood. She was given to read, and did read, a printed form (State's Exhibit 7); including a waiver of rights which she signed as follows:

"Place City Hall, Decatur, Ala.
"Date 2-8-70
"Time 10:44 P.M.

"Before we ask you any questions, you must understand your rights.

"You have the right to remain silent.

"Anything you say can be used against you in court.

"You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

"If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

"If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

"A lawyer will also be provided for you now, if you wish.

"*Waiver of Rights.* I have read this statement of my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

"Signed /s/ Artie Miller

"Witness /s/ Det. Jep Tallent
"Witness /s/ John C. McBride"

The coroner was present at the jail during these proceedings but the appellant, ac-

cording to witness Tallent, told him in her kitchen soon after the killing that she had stabbed the deceased. He testified that her rights were fully explained to her before she made this statement and went into detail as to this matter. This was the first statement in the way of a confession she made.

It is now a matter of common knowledge that law enforcement agencies do use typed forms of the *Miranda* requirements in custodial interrogation and no error appears in this respect. Chandler v. State, 283 Ala. 29, 214 So.2d 306; Beverly v. State, 281 Ala. 325, 202 So.2d 534; Elrod v. State, 281 Ala. 331, 202 So.2d 539.

■ We find no error in the admission of any of the evidence above referred to. *Miranda*, supra, and authorities above set out.

The essential elements of murder in the first degree are that the taking of life must have been willful, deliberate, malicious and premeditated. Code of Alabama, 1940, Tit. 14, § 314, recompiled 1958; Cosby v. State, 269 Ala. 501, 114 So.2d 250. The testimony, if believed by the jury under the required rule, is ample to support the verdict in the case at bar.

■ Appellant's requested written charges, 1, 2, 3 and 4 are affirmative in nature and were properly refused by the court. Charges 11, 13, 15, 16, 17, 18 and 19 are all covered by the very full and explicit oral charge of the court and, therefore, were properly refused.

What we have said disposes of the grounds of the motion for a new trial and the argument advanced in brief of appellant for error. In addition we have searched the record for error as is our duty under the Statute. Finding no reversible error, this cause is due to be affirmed.

The foregoing opinion was prepared by W. J. HARALSON, Supernumerary Circuit Judge, and adopted by this Court as its opinion.

Affirmed.

PRICE, P. J., and CATES, ALMON and TYSON, JJ., concur.