LEIGH M. CLARK, Supernumerary Circuit Judge.
No contention is made, and we think no reasonable contention can be made, that the evidence was not sufficient to support the conviction of appellant for murder in the first degree. We limit our discussion of the facts to that part of the evidence that should be considered in connection with the questions raised or presented on this appeal.
Defendant killed his sister’s husband by shooting him at close range with a single *190 barrel shotgun. The pellets and wadding of the shell penetrated the victim’s chest. Defendant had been living at the home of the victim and his wife for some time. At times there was harmony; at other times, there was wrangling between the brothers-in-law. While the wife was away on a Sunday morning in a city in an adjacent county to launder family clothing and household laundry, the brothers-in-law indulged freely in drinking intoxicating liquor. About noon that day, while under the influence to some extent at least of intoxicating drink, the brothers-in-law, accompanied by a neighbor and a four-year-old daughter of the victim, decided to do some racing. Defendant was driving one automobile and his brother-in-law the other. In the course of rather extended races, the gas tank fell off one of the automobiles. About the middle of the afternoon the wife returned to the home; about the same time the racers returned. Arrangements had been made to bring the disabled automobile and the gasoline tank back to the neighborhood. A short while before any of them re-entered the residence, defendant while driving one of the automobiles was seen attempting to run down the victim who at the time was walking in the road. There was evidence that the victim became exceedingly angry with his brother-in-law and demanded that he leave the victim’s home. This was communicated to the victim’s wife and the wife placed defendant’s personal effects, including the shotgun, on the front porch. Each was extremely angry with the other. Defendant raised the gun, pointed it at the victim and fired. There was some evidence, consisting chiefly of a statement made by defendant, that his brother-in-law told him that he did not have enough courage to shoot the victim. Defendant remained at the side of his brother-in-law, indicated some remorse and hope that he would survive, waited while his sister called an ambulance and “the law,” and readily submitted himself to its custody. He never testified on the trial. There was no substantial evidence of self-defense.
Photographs were taken after dark of the body of deceased as it still lay on the ground. Two of such photographs were admitted in evidence. One, aided by flashbulb effect, clearly shows a gunshot wound in his left chest. The other, the second in sequence of such photographs introduced in evidence, reveals little of significance other than the hull of a shotgun shell a short distance from the deceased. There was evidence that this spent shell was fired at the deceased and that it had remained at the place shown in the photograph until after the photograph was taken. Defendant's objection to the admission in evidence of each of the photographs was overruled. When the first of the two photographs was offered, defendant objected on the ground “that it is inflammatory, it’s prejudicial, unnecessary, lacks any probative value, fails to show anything witnesses haven’t testified to.” When the second was offered, defendant objected “on the same grounds” made to the offer of the first photograph, and “In addition that is cumulative.”[1] Other than the visible wound in the victim’s left chest, there was nothing about either of the pictures of an emotion-stirring nature. Even if the nature of either photograph were otherwise, we would not be justified in reversing the trial court as to its rulings admitting the photographs in evidence. In dealing with ghastly realities, ghastliness does not furnish a valid ground of objection to evidence that truly portrays the facts. Cook v. State, 52 Ala.App. 159, 290 So.2d 228; Snow v. State, 50 Ala.App. 381, 279 So.2d 552, cert. denied 291 Ala. 798, 279 So.2d 558; Hall v. State, 50 Ala.App. 666, 282 So.2d 104; McHugh v. State, 53 Ala.App. 473, 301 So.2d 238.
Several hulls of shotgun shells of the same gauge as the homicide weapon were found in the yard where the killing occurred. There was no contention by anyone that more than one shot was fired by any *191 one the afternoon of the homicide. It may well be that reference to the other empty shells in the yard should have been omitted from the testimony, but it appears that the State was attempting to clear up any possible mystery or misunderstanding that might exist by reason of the existence of the hulls in the yard immediately after the homicide. They had no direct bearing upon the issues in the case, but it seems that there was no objection by defendant to any of the testimony as to such shells or the occasion therefor, except an objection by defendant as to the offer in evidence of one of them, Exhibit 5. No ground of objection was stated by defendant. The presence of the shells in the yard was explained in the testimony, without any objection by defendant, some of it being brought out on cross-examination of State’s witnesses, which testimony showed that defendant had previously practice fired the gun in the yard. Appellant now urges that there was reversible error in the court’s admitting three of the hulls in evidence. As stated, an objection was made to one of them. No objection was made to the offer of either of the other two. There was nothing unique about the shell to which the objection was made. Defendant could not have been injured by its introduction in evidence. It was no less relevant than the other shells, not including the hull of the shell containing the fatal pellets and wadding, which apparently were in evidence with the approval of both parties. We cannot find prejudicial error in the ruling of the court in admitting the particular shell in evidence.
Immediately after the officers arrived at the scene of the killing and had taken defendant into custody, they placed him in a patrol car, explained to him his rights, reading to him from a card containing a list of them, and while doing so, defendant interrupted them by stating, “You don’t have to read me my rights,” and said “I know my rights. I killed the son of a . . .” After completion of the explanation and reading of the rights, defendant repeated what he had said. On the way to jail, he said, “Well, I know what I done,” “I shot him,” and, “I want to hurry up and get this over with, so I can build my time.” Before a witness testified as to the quoted statements made by defendant, an in camera interrogation was allowed defendant’s counsel. During the in camera proceeding, the witness stated that defendant, at the time of his statements, was intoxicated; that he had a strong odor of alcohol about him; that he was “pretty intoxicated, pretty high.” The witness also testified that at the time defendant was “coherent,” he had “good control, body control, speech control.” According to the testimony of the witness during the proceeding out of the presence of the jury, defendant was attentive to the reading of his rights to him, stated that he understood them, recognized the witness as an officer and seemed to continue to have an understanding of his whereabouts and what was happening. Before the testimony in the presence of the jury was resumed, an objection was interposed by defendant to testimony of the witness as to the statements made by defendant. The court overruled the objection, and defendant reserved an exception. In urging that the action of the court was erroneous, appellant contends that defendant was so intoxicated that his confession was inadmissible in evidence.
In holding that the trial court was not in error, we quote what was said, which has been consistently followed, by Judge Al-mon, now Mr. Justice Almon of the Supreme Court of Alabama, in Anderson v. State, 45 Ala.App. 653, 235 So.2d 902, cert. denied 285 Ala. 756, 235 So.2d 906:
“The rule is well established in this jurisdiction that intoxication short of mania or such an impairment of the will and mind as to make the person confessing unconscious of the meaning of his words will not render a confession inadmissible. Warren v. State, 44 Ala.App. 221, 205 So.2d 916, cert. denied 281 Ala. 725, 205 So.2d 920; Ray v. State, 39 Ala.App. 257, 97 So.2d 594; Smith v. State, 25 Ala.App. 297, 145 So. 504; Eskridge v. State, 25 Ala. 30.”
About five or six hours after defendant was taken into custody and while he *192 was being processed at the county jail, he was interviewed by a deputy sheriff, who obtained a written statement from defendant after he had been fully apprised of his constitutional rights. Defendant’s statements, including his written statement, were admitted in evidence over objection of defendant. Defendant’s statements at such time do not vary materially from the statements he made while in the patrol car. Apparently appellant does not now contend that defendant’s statements made while being processed at the jail were inadmissible, but appellant says that the trial court “erred by cutting off defense counsel’s attempt to show to the jury all the facts and circumstances surrounding the confession,” in that, as urged by appellant, an attempt by defendant’s counsel to show that officers failed to use an “available intoximeter was interrupted and defense counsel had no opportunity to prove the availability of the machine and its usefulness in determining the level of intoxication.” The record shows that at one time while a State’s witness, an officer, was being re-recross-examined as to his knowledge that such a machine is used, the trial court sustained an objection on the ground that the question was repetitious. We find that ground for objection was well taken. The witness had been extensively interrogated by defendant’s counsel as to the availability and use of an intoximeter, referred to in the testimony as a PEI machine. He stated that the machine was “right next door” to where he and defendant were at the time of the witness’ interview with defendant. He further said that he did not advise defendant that there was a PEI machine and did not “suggest to him the availability of a test to determine his level of intoxication.” Immediately after the testimony just quoted was given, defendant’s counsel pursued an entirely different subject on cross-examination of the witness and did not refer to it again during the rather lengthy continuation of the cross-examination. Then, on redirect examination of the witness, the State opened up the subject again, and on recross-examination its witness was asked whether he had used any kind of test “to determine the level of intoxication” and the witness replied that he had not and further:
“Q. But you do investigate everything that you feel like is important, is that correct?
“A. Visual observation of the person, he was not very intoxicated at the time I talked to him.”
Thereupon on re-redirect examination, the witness was asked if defendant ever requested that the witness “test his level of intoxication,” and the witness replied in the negative. Then, on re-recross-examination, the following occurred:
“Q. Adolph, did you advise him that you had there in the jail the . . . (interrupted)
“MR. HARDIN: Your Honor, again we object.
“THE COURT: I am going to sustain the objection for the third time.”
Although the interjection of an objection before the question had been completed was not justified, it seems clear, and there is no contention to the contrary, that defendant’s counsel was in the process of inquiring whether the witness had advised the defendant that he had the PEI machine there in the jail at the time, which inquiry the witness had previously definitely answered. The court was not in error in not permitting the repetitious testimony.
During the concluding argument of counsel for the State, an objection was made by defendant and overruled by the court to the following:
“MR. HARDIN: What they’re really asking you to do is to look at the facts, and when you look at those facts you’re going to see that we have a clear case — a real clear case; one of the clearest cases I’ve seen of First Degree Murder. So what do they ask you to do? They say, “I’m sorry. Our man was intoxicated.” So they’re asking you to excuse this man for what he’s done because he was drunk.
That’s what they’re asking you to do.” The objection was:
“Your Honor, we’re going to object to that as being a misstatement.”
*193 As we do not have any of the argument of defendant’s counsel, we are not in as good a position as was the trial judge to pass upon the propriety of the quoted argument. Appellant now urges in effect that counsel for the State was contending by the argument that defendant’s counsel took the position and had argued that defendant was entitled to an acquittal merely because he was drunk when he killed his brother-in-law. We doubt that such was contended by defendant. We also have doubt that the quoted argument requires the construction that defendant’s counsel had contended that mere drunkenness of defendant irrespective of the state of such intoxication, entitled defendant to an acquittal. State’s counsel had the right to argue, under the circumstances of the case, that defendant’s defense was based largely, if not solely, on the extent of defendant’s intoxication. In emphasizing such defense, it is readily understandable that State’s counsel would not be required to include the necessary state of intoxication in every sentence of his argument with reference to defendant’s intoxication and apply it to every degree of homicide included within the indictment. If none of the argument of defendant’s counsel was subject to the criticism that he was arguing that defendant’s drunkenness entitled him to a verdict of not guilty, and if such a criticism is not negated or qualified by some of the argument of counsel for the State preceding or following the quoted excerpt from his argument, defendant’s ground of objection was valid, we think. But we should not assume what was in or what was not in argument of parties that is not contained in the transcript of the proceedings. Under such circumstances, we cannot conclude that the trial court was in error in permitting State’s counsel to state arguendo, as he did, his opinion of the argument made or position taken by defendant’s counsel. Owens v. State, 291 Ala. 107, 278 So.2d 693; Sanders v. State, 260 Ala. 323, 70 So.2d 802; Barnett v. State, 52 Ala.App. 260, 291 So.2d 353.
Appellant further insists that the court’s oral charge on the subject of the state of intoxication necessary to preclude a verdict of murder or manslaughter in the first degree was to some extent erroneous and that, to the extent that it was erroneous, it had a cumulative effect upon the argument of State’s counsel to the prejudice of defendant. We find among the statements of the court in its charge to the jury on the matter of intoxication, the following:
“However, if due to excessive intoxication, a person’s ability to frame an intent to do an act, or his ability to discern the difference between right and wrong is removed to the extent that he is totally incapable of entertaining or forming the intent to kill, then he could not be convicted of murder, but only of manslaughter in the second degree at most.”
At the conclusion of the court’s oral charge, defendant’s counsel took exception to “that portion of Your Honor’s charge in which you stated that in a defense of intoxication the Defendant must be incapable of involuntarily doing anything or willing to do anything. The Defendant could be capable of doing some things, but still be incapable of forming the necessary intent, etc., as set forth by the law.” The record immediately continues as follows:
“THE COURT: (Addressing the jury) As I told you, on the defense of intoxication, ladies and gentlemen, the law is that due to intoxication a person must be — his ability to form an intent to kill must have been destroyed by the fact that he had been drinking to that excess.”
For the court to charge a jury in a trial for murder in the first degree that one’s extremely intoxicated condition would not prevent his being guilty of what otherwise would be murder or manslaughter in the first degree unless he was so intoxicated that he was “incapable of voluntarily doing anything,” would be inaccurate. The rule is that voluntary drunkenness is not a defense to a criminal charge unless it is so extreme as to render impossible some mental condition which is an essential element of the criminal act. Gautney v. State, 284 Ala. 82, 222 So.2d 175; Strong v. State, 52 Ala.App. 237, 291 So.2d 325. In charging the jury on *194 the effect of intoxication upon the question of defendant’s guilt as to the four kinds of homicide embraced in the indictment, the court took into consideration each of the two degrees of murder and each of the two degrees of manslaughter. The court emphasized that premeditation, as well as intent and malice, is essential to murder in the first degree; that malice as well as intent, is essential to murder in the second degree; that intent is essential to manslaughter in the first degree; and that neither premeditation, nor malice, nor intent is essential to manslaughter in the second degree. Immediately after referring to the elements of premeditation, malice and intent, the court said:
“. . .it must be such as to render that person incapable of volition; that is, of willing or choosing to do an act. Incapable of voluntarily doing anything. Incapable of forming or entertaining malice and incapable of forming and doing with a purpose to do a voluntary act. If these things do not exist, that is, the ability to choose between right and wrong, or the ability to — of volition; of being able to willingly do anything, then the person could not be convicted of murder or manslaughter in the first degree, because those elements require the intent to commit the act.”
Our consideration of the court’s charge as a whole, when particular consideration of the words “Incapable of voluntarily doing anything” and their context, convinces us that the word “anything” as there used is not to be understood in its infinite sense, but as limited to the conduct of defendant as shown by the evidence. We think the jury understood from the charge of the court that if defendant was so intoxicated that he was incapable of premeditatedly killing the deceased, he was not guilty of murder in the first degree; that if he was so intoxicated that he could not have been capable of maliciously killing him, he was not guilty of murder in the second degree; that if he was so intoxicated that he could not have intentionally killed the deceased, he would not be guilty of manslaughter in the first degree. In charging the jury on the subject of voluntary drunkenness, the court was applying the instructions to the undisputed evidence, that defendant had killed his brother-in-law. The killing was the pivotal act of .reference.
In Gosa v. State, 273 Ala. 346, 350, 139 So.2d 321, 324, it was held:
“The rule is well established that where a portion of the oral charge is erroneous, the whole charge may be looked to and the entire charge must be construed together to see if there be reversible error. Wright v. State, 269 Ala. 131, 111 So.2d 596.”
The oral charge of the court, taken as a whole, was as favorable to defendant on the subject of intoxication as the authorities permit. It is to be noted that in Gosa v. State, supra, it was said:
“. . . Charge 30 was held good in Heninburg v. State, 151 Ala. 26, 43 So. 959, and Hill v. State, 9 Ala.App. 7, 64 So. 163, and later held bad in Cagle v. State, 211 Ala. 346, 100 So. 318, and Ellis v. State, supra [246 Ala. 300, 20 So.2d 512]. Charge 30 was held bad because it permits drunkenness to reduce homicide to manslaughter in the second degree, whereas the correct rule in this jurisdiction is that drunkenness may reduce the degree of the homicide from murder to manslaughter but is no defense as to either degree of manslaughter; Cagle v. State, supra; Laws v. State, 144 Ala. 118, 42 So. 40. ...”
We have searched the record for error prejudicial to defendant and have found none. The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Supernumerary Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.

. There was an additional ground not insisted upon on appeal, as it was based on the mistaken belief that there was no testimony that the shell had not been moved before the photograph was taken.